## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP DIVISION

In re:

Goldner Capital Management LLC[1],

                                Debtor.

Chapter 11
Case No. 24-73789

*Joint Administration Pending*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MOTION TO DISMISS BANKRUPTCY CASES

### Introduction

    Pending before this Court are seven motions (the "Motions") to dismiss with prejudice filed by Capital Source, LLC ("Capital Source") and The Capital Foresight Limited Partnership ("Capital Foresight" and together, "Capital") in the chapter 11 cases (the "Chapter 11 Cases") of Goldner Capital Management LLC, GCM Manager LLC, GCM UP LLC, GCM WASH LLC, GCM Parkside LLC, Missouri MT Holdings LLC, and LHW Master Tenant LLC (collectively, the "Debtors").  In the Motions, Capital requests that Debtors' cases be dismissed (a) because Samuel Goldner, an individual who is not the Debtors' agent, filed the bankruptcy petitions despite having no authority to do so and (b) for cause under Section 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code").  In support of the Motions, Capital submits the *Declaration of Netanel Saidoff in Support of Motion to Dismiss Bankruptcy Cases* (the "Saidoff Declaration") attached to the Motions as **Exhibit A**. In further support of the Motions, Capital respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases are: GCM Manager LLC (Case No. 24-73790), GCM Parkside LLC (Case No. 24-73791), GCM UP LLC (Case No. 24-73792), GCM Wash LLC (Case No. 24-73793), LHW Master Tenant LLC (Case No. 24-73794), Missouri MT Holdings LLC (Case No. 24-73795).   On October 10, 2024, Debtors' counsel filed its Motion for an Order Authorizing the Joint Administration of the Chapter 11 Cases.

**Preliminary Statement**

1.      Debtors' voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Petitions") were knowingly filed without authorization and present a textbook bad faith filing.

2.      Capital pursuant to, among other loan documents, those certain promissory notes, that certain Financing and Investment Agreement, and that certain Pledge and Security Agreement dated May 20, 2022 (the "Pledge Agreement") (collectively the "Loans Documents") loaned Goldner Capital Management, LLC ("Goldner Capital") and Sam Goldner ("Goldner," collectively with Goldner Capital, the "Borrowers"), no less than $20,600,000 (the "Loan") between May 20, 2022, to April 26, 2023.

3.      Debtors' principal, Goldner, and Debtor Golder Capital do not and cannot dispute that:

   a.   Capital Source and Capital Foresight loaned Goldner and GCM Manager LLC over $20 million;

   b.   Goldner and Goldner Capital have not made any payments whatsoever to Capital Source and Capital Foresight, creating Events of Default under the Loan Documents;

   c.   The loans were secured by the Pledge Agreement, signed by Goldner and Debtor Goldner Capital, in which, among other things, Goldner and Debtor Goldner Capital pledged their membership interests and voting rights in multiple entities (each a "Company" and collectively, the "Companies") to Capital Source, including without limitation, Debtors GCM Manager LLC, GCM Wash LLC, GCM UP LLC, GCM Parkside LLC.

4.      Specifically, in the Pledge Agreement, Goldner, as the sole member and manager of Debtor GCM Manager LLC ("GCM"), pledged his membership interest and voting rights as the member and manager of GCM to Capital Source.

5.      Similarly, Debtor Goldner Capital, as the sole member and manager of Debtors GCM Wash LLC, GCM UP LLC, and GCM Parkside LLC, pledged its membership interest and voting rights as the member and manager of those Debtors to Capital Source.

6.      In connection with the Pledge Agreement, Goldner and Debtor Goldner Capital (collectively, "Pledgors") delivered membership certificates for Debtors GCM, GCM Wash LLC, GCM UP LLC, and GCM Parkside LLC, assigned in blank, to Capital Source (the "Certificates").

7.      Pursuant to the plain language of the Pledge Agreement as set forth in Sections 8.1(a) and (b) of the Pledge Agreement, only for so long as there is no Event of Default[2] under the Loan Documents were Pledgors provided the right to exercise the voting rights for the Companies assigned to Capital Source pertaining to the Pledged Equity Interests.

8.      Pursuant to Section 8.2 of the Pledge Agreement, as a result of the Events of Default, all of Pledgor's right to exercise the voting rights in the Companies granted under Sections 8.1(a) and (b) of the Pledge Agreement automatically ceased and all such rights become vested in Capital Source who thereupon had the sole right to exercise such voting and consensual rights (pledged to it in 2022).

9.      As a result, Goldner no longer had authority to act as manager of these Debtors or to take any action thereof, including filing the Chapter 11 Cases for these Debtors.  Saidoff Decl. ¶ 33.  In furtherance of such rights, Capital Source passed resolutions, each dated September 20, 2024, removing Goldner as the Manager of GCM, GCM Wash LLC, GCM UP LLC, and GCM Parkside LLC, and Capital Source designated itself as the Manager of those entities (each a "Resolution" and collectively, the "Resolutions"). On September 20, 2024, Capital Source's counsel sent Goldner and the other Borrowers a notice (the "Voting Right Exercise Notice") stating

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Pledge Agreement.

that pursuant to Section 8.2 of the Pledge Agreement all of voting rights of Golder and Debtor Goldner Capital in any of the Companies automatically ceased and all such rights became vested in Capital Source and that Goldner and Debtor Goldner Capital had no further power, right or authority with respect to the Companies, including GCM Manager LLC, and that Goldner had been removed as manager of GCM, GCM Wash LLC, GCM UP LLC, and GCM Parkside LLC. Copies of the Resolutions were included with the Voting Right Exercise Notice.

10.    Importantly, GCM is the Manager of Debtors Missouri MT Holdings LLC and LHW Master Tenant LLC.  Accordingly, as the Manager of GCM, Capital Source is the Manager of Debtors Missouri MT Holdings LLC and LHW Master Tenant LLC.

11.    Therefore, Goldner had no authority (by way of voting rights or as Manager of Debtors) to file the Chapter 11 Cases.

12.    Nonetheless, Goldner, purportedly as "Manager" of Debtors GCM, GMC Wash LLC, GCM UP LLC, and GCM Parkside LLC "certified" purported resolutions authorizing those entities to file the Petitions. [Case No. 24-73790; Dkt. No. 3.] Similarly, as the purported Manager of GCM (the former Manager of Debtors Missouri MT Holdings LLC and LHW Master Tenant LLC), Goldner certified purported resolutions authorizing those entities to file Petitions. [Case No. 24-73794; Dkt. No. 3 and Case No. 24-73795; Dkt. No. 3.]

13.    Worse, having certified the aforementioned resolutions, Goldner knew—and Debtors' counsel should have known—that Goldner lacked authorization to file these Chapter 11 Cases.

14.     Moreover, in his Declaration, Goldner concedes the Chapter 11 Cases were filed solely to thwart Capital Source's ability to enforce the notes and Capital Source's impending foreclosure on the Pledged Equity Interests in Debtors.  Tellingly, Debtors have failed to seek

authorization to use cash collateral or file for any other standard first day relief.  Indeed, this bankruptcy is not a legitimate effort to reorganize but is merely an attempt by Goldner to delay the inevitable.

15.      In short, Goldner had no authority to cause the Debtors to file the Chapter 11 Cases because, upon the Events of Default, Goldner's voting and consensual rights were vested in Capital Source.  Moreover, the Cases were filed in bad faith to avoid litigating the Notes and Pledge Agreement rather than genuinely attempting to reorganize. Accordingly, the Chapter 11 Cases should be dismissed.

## Jurisdiction

16.      The Court exercises the jurisdiction vested in the U.S. District Court pursuant to 28 U.S.C. § 1334(b).

17.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  The Court has the authority to hear and determine the issues raised under 28 U.S.C. § 157(b)(1).

## Background

### A. Loans and Pledged Membership Interest of Goldner and Goldner Capital Management to Capital Source

18.      On May 20, 2022, Capital Source provided Goldner, Debtor Goldner Capital, Debtor Missouri MT Holdings, and Missouri OP Holdings LLC (collectively, the "Borrowers") a loan in the amount of $14 million. The loan is memorialized in that certain Promissory Note dated May 20, 2022 (The "First Note").  Saidoff Decl. ¶ 11.

19.      Pursuant to the terms of the First Note, Borrowers are jointly and severally liable and agreed to repay the Loan principal plus the Applicable Interest Rate[3] on the first day of each

_____

[3] With respect to the terms of the promissory notes referenced herein, all capitalized terms shall have the meanings set forth in the First Note.

month until all sums due and owing had been paid in full on Maturity Date, unless sooner accelerated by Capital Source.  Saidoff Decl. ¶ 12.

20.    Also, as of May 20, 2022, as an inducement for Capital Source to make the Loans and as security for Borrowers' obligations under the Loan Documents, Goldner and Goldner Capital assigned and transferred their membership interests and voting rights as the members and managers of the Companies to Capital Source under the Pledge Agreement.  According to Schedule 1 of the Pledge Agreement, Goldner pledged his 100% interest in Debtor GCM, while Goldner Management LLC pledged its 100% interest in Debtors GCM Parkside LLC, GCM UP LLC, and GCM Wash LLC. According to Schedule 2 of the Pledge Agreement, Debtors Missouri MT Holdings LLC and LHW Master Tenant LLC are the direct and indirect subsidiaries of GCM Missouri LLC, whose membership and voting interests were likewise pledged to Capital Source from Goldner Capital.  Saidoff Decl. ¶ 13.

21.    In furtherance of the Pledge Agreement, Goldner executed and delivered the Certificates evidencing the Pledged Equity Interests and instrument of transfer (assignment in blank) with respect to the pledged equity interest in the Company. Saidoff Decl. ¶ 14.

22.    Pursuant to Section 8.1(a) and (b) of the Pledge Agreement, only so long as there is no Event of Default (under the Loan Documents, Goldner was entitled to exercise Capital Source's voting rights pertaining to the Pledged Equity Interest in the Company (as defined in the Pledge Agreement).  Saidoff Decl. ¶ 15.

23.    Pursuant to Article 4 of the Pledge Agreement, following an Event of Default (as defined in the Pledge Agreement), Capital Source has the right, at any time, in its discretion and without notice to the Member of the Company, to transfer and/or register in the name of the Capital

Source or its nominee the Pledged Collateral (as defined in the Pledge Agreement). Saidoff Decl. ¶ 16.

24.     Pursuant to 8.2 of the Pledge Agreement, following an Event of Default, all of Goldner's voting rights pursuant to Section 8.1(a) of the Pledge Agreement shall automatically cease, and all such rights shall become vested in Capital Source who shall thereupon have the sole right to exercise such voting and consensual rights. Saidoff Decl. ¶ 17.

25.     On December 12, 2022, Capital Foresight provided Goldner and Debtor Goldner Capital an additional loan in the amount of $1.5 million. The loan is memorialized in that certain Promissory Note dated December 12, 2022 (The "Second Note"). The Second Note provides a maturity date of January 12, 2023. Saidoff Decl. ¶ 18.

26.     On January 12, 2023, the Second Note's Maturity Date, the Pledgors failed to make their payments pursuant to the terms of the Second Note. As a result, an Event of Default occurred pursuant to the terms of the Second Note. The Second Note also provides a cross-default provision, which, if an Event of Default were to occur under the Second Note, it in turn, created a default under the First Note and the Pledge Agreement. Saidoff Decl. ¶ 19.

27.     On January 27, 2023, Capital provided notice to the Borrowers of the Event of Default (the "Default Notice"). Saidoff Decl. ¶ 20.

28.     In the Default Notice, Capital notified Borrowers that their failure to pay amounts owed when due under the Second Note constituted an Event of Default and a cross-default of the First Note. Saidoff Decl. ¶ 21.

29.     In addition, Capital notified Borrowers that the entire unpaid balance of principal, plus interest, on the First Note and Second Note was accelerated and immediately due and payable,

that interest would begin to accrue immediately at the "default rate," and that Capital's costs and reasonable attorneys' fees would be added to the balance due.  Saidoff Decl. ¶ 22.

30.    On March 24, 2023, Capital Foresight provided Goldner and Debtor Goldner Capital an additional loan in the amount of $1.3 million. The loan is memorialized in that certain Promissory Note dated March 24, 2023 (The "Third Note").  Like the Second Note, the Third Note provides a cross-default provision, which, if an Event of Default were to occur under the Third Note, a default would likewise occur under the Second Note, the First Note, and the Pledge Agreement, among other agreements.  Saidoff Decl. ¶ 23.

31.    On March 29, 2023, Capital Foresight provided Goldner and Debtor Goldner Capital an additional loan in the amount of $1.8 million. The loan is memorialized in that certain Promissory Note dated March 29, 2023 (The "Fourth Note"). Like the Third Note and the Second Note, the Fourth Note provides a cross-default provision, which, if an Event of Default were to occur under the Fourth Note, a default would likewise occur under the Third Note, the Second Note, the First Note, and the Pledge Agreement, among other agreements.  Saidoff Decl. ¶ 24.

32.    Also on March 29, 2023, the Borrowers executed the Omnibus Amendment in which the Borrowers, among other things: (a) acknowledged the defaults under the First Note and Second Note; (b) acknowledged receipt of the Default Notice and that by the extension of further credit under the Third Note and the Fourth Note Capital Source had not waived the defaults enumerated in the Default Notice, (c) acknowledged that Capital had not relieved or released the Borrowers from any of their respective duties, obligations, covenants or agreements under the Notes, (d)  recognized that Capital's actions did not constitute a waiver or release of any default by Borrowers, or a limitation on the exercise of, any of the rights or remedies available to Capital at law, in equity arising from any such default, and (e) reaffirmed their obligations under the Loan

Documents, including the First Note, the Second Note, and the Pledge Agreement.  Saidoff Decl. ¶ 25.

33.     On April 26, 2023, Capital Foresight provided Goldner and Debtor Goldner Capital an additional loan in the amount of $2 million. The loan is memorialized in that certain Promissory Note dated April 26, 2023 (The "Fifth Note" and together with the First Note, the Second Note, the Third Note, and the Fourth Note, the "Notes" and each a "Note"). Like the Fourth Note, the Third Note, and the Second Note, the Fifth Note provides a cross-default provision, which, if an Event of Default were to occur under the Fifth Note, a default would likewise occur under each other Note and the Pledge Agreement, among other agreements.  Saidoff Decl. ¶ 26.

34.     Pursuant to section 1(b) of the Third Note, the Fourth Note, and the Fifth Note (collectively, the "Demand Notes"), the balance of the Demand Notes shall be due and payable on the Maturity Date, which may occur at any time on three (3) days prior written notice.  Saidoff Decl. ¶ 27.

35.     Also on April 26, 2023, Borrowers executed the Second Omnibus Amendment in which Borrowers, among other things: (a) acknowledged the defaults under all of the then outstanding Notes; (b) reaffirmed their obligations under the Notes; (c) reaffirmed their obligations under the Pledge Agreement; and (d) recognized that "nothing herein shall (i) relieve or release [Borrowers] and/or any guarantor under the Loans from any of their respective duties, obligations, covenants or agreements under the Loan Documents, or (ii) constitute a waiver or release of any default . . . ."  Saidoff Decl. ¶ 28.

36.     On September 6, 2024, Capital sent another notice to Borrowers that, pursuant to the terms of the Notes, the Omnibus Amendment and the Second Omnibus Amendment, the First Note and the Second Note continued in default and the Third Note, the Fourth Note, and the Fifth

Note were in default since their effective dates and Capital demanded payment (the "Demand Letter").  Saidoff Decl. ¶ 29.

37.    To date, Borrowers have failed to repay any of the Notes.  Saidoff Decl. ¶ 30.

38.    Subsequently, on September 8, 2024, Capital filed its Complaint against Goldner and Debtor Goldner Capital in the Eastern District of New York District Court to enforce the five promissory notes and Pledge Agreement.  Saidoff Decl. ¶ 31.

39.    As a result of the Events of Default, acknowledged by Goldner and Debtor Goldner Capital, and pursuant to 8.2 of the Pledge Agreement, all of Goldner's voting rights as the sole Member of Debtors GCM, GCM Parkside LLC, GCM UP LLC, and GCM Wash LLC automatically ceased, and all such rights become vested in Capital Source who thereupon had the sole right to exercise such voting and consensual rights prior to the filing of the Chapter 11 Cases. Saidoff Decl. ¶ 32.

40.    As a result, Goldner no longer had authority to act as manager of these Debtors or to take any action on behalf of any of them, including filing the Chapter 11 Cases.  In furtherance of such rights, Capital Source passed the Resolutions which designated itself as the Manager of GCM, GCM Parkside LLC, GCM UP LLC, and GCM Wash LLC. On September 20, 2024, Capital's counsel sent Goldner and the other Borrowers  the Voting Right Exercise Notice stating that pursuant to Section 8.2 of the Pledge Agreement all of voting rights of Golder and Debtor Goldner Capital in all of the Companies automatically ceased and all such rights became vested in Capital Source and that Goldner and Debtor Goldner Capital had no further power, right or authority with respect to the Companies, including GCM Manager LLC, and that Goldner had

been removed as manager of Debtors GCM, GCM Parkside LLC, GCM UP LLC, and GCM Wash LLC.[4] All such actions occurred prior to the filing of the Chapter 11 Cases.  Saidoff Decl. ¶ 33.

41.     Nonetheless, Goldner, as "Manager" of Debtors GCM, GMC Wash LLC, GCM UP LLC, and GCM Parkside LLC certified purported resolutions authorizing those entities to file Petitions.  [Case No. 24-73790; Dkt. No. 3.] Similarly, as the purported Manager of GCM (the former Manager of Debtors Missouri MT Holdings LLC and LHW Master Tenant LLC) Goldner certified purported resolutions authorizing those entities to file Petitions.  [Case No. 24-73794; Dkt. No. 3 and Case No. 24-73795; Dkt. No. 3.]

**B.  Goldner Improperly Files Debtors' Chapter 11 Cases to Stop UCC Sale of the Pledged Membership Interest**

42.     On September 27, 2024, Capital Source provided Notices of Disposition of the pledged equity interests in GCM, GCM Parkside LLC, GCM UP LLC, and GCM WASH LLC pursuant to a private sale under Sections 9-610 through 9-613 of the NY UCC (the "UCC Sale"). The UCC Sale was set to take place on October 7, 2024.  Saidoff Decl. ¶ 34.

43.     As set forth in the *Declaration of Samuel Goldner, Manager of Goldner Capital Management LLC, Pursuant to Local Bankruptcy Rule 1007-4* [Case No. 24-73789; Dkt. No. 4] (the "Goldner Declaration"), the Debtors filed these Chapter 11 Cases as a means to block the UCC Sale. Goldner, without authority, filed the Chapter 11 Cases as Manager of Goldner Capital, GCM, GCM Parkside LLC, GCM UP LLC, GCM WASH LLC, LHW Master Tenant LLC, and Missouri MT Holdings LLC.

44.     Despite having filed their petitions on October 2, 2024, to date, the Debtors have filed no substantive motions nor sought any form of affirmative relief to further their Chapter 11

---

[4] Each of these Debtors were formed in Delaware through a certificate of formation and operate through an operating agreement under Delaware law.

Cases.[5] [Case No. 24-73790; Dkt. No. 1.] Without such relief, the Debtors are prevented from, among many things, paying employees accrued wages and using any cash. There is no indication that the Debtors are attempting to use these Chapter 11 Cases to successfully reorganize. Accordingly, for the reasons set forth below, these Chapter 11 Cases should be dismissed with prejudice.

### Relief Requested

45.     Capital seeks an order, in a form attached to the Motions as **Exhibit B**, dismissing the Debtors' Chapter 11 Cases because Goldner did not have the authority to file the Debtors' petitions and the Debtors filed these Chapter 11 Cases in bad faith.  Additionally, Capital seeks the entry of an order to show cause as to why Goldner and Debtors' counsel should not be sanctioned for knowingly filing the Chapter 11 Cases without authorization.

### Basis for Relief

### I.    The Chapter 11 Cases Should Be Dismissed for Cause.

46.     Section 1112(b) of the Bankruptcy Code governs dismissals of chapter 11 cases; it permits a party-in-interest, after notice and hearing, to seek to dismiss a chapter 11 case in the best interests of the creditors and the estate for cause.  *See* 11 U.S.C. § 1112(b).

47.     "Section 1112(b) requires courts to engage in a two-step process when determining whether to convert or dismiss a chapter 11 case*." In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001).  To begin, the court must determine whether cause exists either to convert or dismiss the case.  After, it then must decide whether it is in the best interests of creditors to dismiss the case or convert it to chapter 7.  *Id.*

---

[5] To date, the Debtors have filed motions to extend the period to file their Schedules and Statements of Financial affairs as another means of delay, and motions for joint administration. These mere procedural motions avail the Debtors no affirmative relief needed to move forward in their Chapter 11 Cases.

48.     The movant bears the burden of establishing cause by a preponderance of the evidence.  11 U.S.C. § 1112(b).  Section 1112(b)(4) provides an inexhaustive list of sixteen grounds for "cause."  11 U.S.C. § 1112(b)(A)-(P).

49.     Bankruptcy courts have "wide discretion" to determine whether cause exists.  *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011).

### A. Cause Exists Under Section 1112(b) of the Bankruptcy Code Because Goldner Filed the Petitions Without Authority.

50.     It should be self-evident that the party that files a debtor's chapter 11 petition must have the authority to do so. Failure to hold such authority to file a voluntary chapter 11 bankruptcy petition is "cause" for relief pursuant to § 1112(b) of the Bankruptcy Code.  *See In re Georgian Backyard LLC*, 661 B.R. 102, 105 (Bankr. E.D.N.Y., 2024).  *See also In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, No. 18-12043 (JLG), 2018 WL 4637460, at *6 (Bankr. S.D.N.Y. Sept. 25, 2018) ("The lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes . . . 'cause' for relief under § 1112(b) of the Bankruptcy Code.").

51.     "State law governs who is authorized to commence a bankruptcy case on behalf of an entity." *In re Georgian Backyard LLC*, 661 B.R. at 105. Because Debtors GCM, GCM Parkside LLC, GCM UP LLC, and GCM WASH LLC (collectively, the "Unauthorized Debtors") were formed in Delaware, the determination as to who is authorized to file falls under Delaware law. *See In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 765 (Bankr. W.D. La. 2013) ("When the issue at hand involves the internal affairs of a business entity, the law of the state of formation usually controls the court's choice-of-law analysis.").

52.     Each of the Unauthorized Debtors was formed as a limited liability company pursuant to the Delaware Limited Liability Company Act (the "Act") by the filing of a Certificate of Formation with the Delaware Secretary of State.

53.     The Act permits a limited liability company to establish—through a limited liability company agreement—the rights, powers, or duties for one or more designated series of members, managers, limited liability company interests or assets (the "series").  *See* Del. Code Ann. tit. 6, § 18-215 (West).

54.     Section 18-402 of the Act states, in relevant part:

> Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members…provided however, that if a limited liability company agreement provides for the management, in whole or in part, of a limited liability company by a manager, the management of the limited liability company, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement…Subject to § 18-602 of this title, a manager shall cease to be a manager as provided in a limited liability company agreement…Unless otherwise provided in a limited liability company agreement, each member and manager has the authority to bind the limited liability company.

Del. Code Ann. tit. 6, § 18-402 (West).  According to each of the Unauthorized Debtors' operating agreements (individually an "Operating Agreement" and collectively, the "Operating Agreements"), management was vested in Goldner.  For example, section 4.1 of Unauthorized Debtor GCM's Operating Agreement states:

> The management of the Company shall be vested in the Member who shall have all powers to control and manage the business and affairs of the Company and may exercise all powers of the Company, subject to the terms of this Agreement.  The Member may delegate its management duties and authority under this Agreement from time to time to a manager (the "Manager") who shall have all the powers and authority to manage the Company.  At any time where there is no Manager then serving, the Member shall be deemed to be the Manager.

55.     Additionally, Goldner could act on behalf of GCM because Section 4.2 of the Operating Agreement states:

> The Manager may execute on behalf of the Company such agreements as may be necessary for the Company to carry out its purposes in accordance with Section 1.3. The Manager may also appoint an authorized person within the meaning of the Act to file any and all documents required to be filed under the Act on behalf of the

Company, and to execute any other agreements to which the Company is to become a party or to take any other actions on behalf of the Company which the Manager is authorized to so take.

56. Though the Unauthorized Debtors halted litigation and the UCC Sale by filing the Chapter 11 Cases, Goldner's authorization to file the Chapter 11 Cases relies on continued authority under the Operating Agreements. Here, it is clear and unambiguous that upon the Events of Default, Goldner and Debtor Goldner Management's right to vote on may matter automatically ceased and all such rights became vested in Capital Source and that Goldner and Debtor Goldner Capital had no further power, right or authority with respect to the Debtors, and that Goldner had been removed as manager of GCM, GCM Wash LLC, GCM UP LLC, and GCM Parkside LLC.  As a result, Goldner no longer had authority to act as manager of these Debtors or to take any action thereof, including filing the Chapter 11 Cases for these Debtors.  Saidoff Decl. ¶ 33.

57.    Sections 8.1 and 8.2 of the Pledge Agreement state, in relevant part:

8.1. So long as no Event of Default of any Secured Obligations shall have occurred and be continuing:

(a) Pledgor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Pledged Equity Interests pledged by the Pledgor or any part thereof for any purpose not inconsistent with the terms of this Agreement or the other Loan Documents; provided, however, that the Pledgor shall give the Secured Party notice of the manner in which it intends to exercise, or the reasons for refraining from exercising any such right. It is understood, however, that neither: (a) the voting by the Pledgor of the Pledged Equity Interests for or the Pledgor's consent to the appointment by members of managers of any Company and/or GCM, or with respect to other matters requiring the vote or approval of members under any Company's and/or GCM's operating agreement (each, a "**Governance Agreement**"), nor (b) the Pledgor's consent to or approval of any action otherwise permitted under this Agreement shall be deemed inconsistent with the terms of this Agreement, within the meaning of this Section 8.1(a), and no notice of any such voting or consent need be given to the Secured Party; and

(b) Secured Party shall promptly execute and deliver (or cause to be executed and delivered) to the Pledgor all such proxies and other instruments as the Pledgor may from time to time reasonably request for the purpose of enabling the Pledgor

to exercise the voting and other consensual rights which it is entitled to exercise pursuant to paragraph 8.1(a) above.

8.2. ***Upon the occurrence of any Event of Default*** that is not timely cured within the applicable cure period, upon written notice from the Secured Party to the Pledgor, ***all rights of the Pledgor to exercise the voting and other consensual rights which they would otherwise be entitled to exercise pursuant to Section 8.1 shall automatically cease***, and ***all such rights shall thereupon become vested in the Secured Party who shall thereupon have the sole right to exercise such voting and other consensual rights***.

*See* **Ex. A**.

58.     Per the Pledge Agreement, an "<u>Event of Default</u>" means any default beyond all applicable notice and cure periods under the Pledge Agreement, the Note, the Financing Agreement, or any of the other Loan Documents or with respect to any of the Secured Obligations. Together, the Operating Agreements, Pledge Agreements, and other Loan Documents' plain language and the Act and Capital's actions, including delivering the Demand Letter, undeniably establish that Events of Defaults had occurred under the Loan Documents which not only resulted in Pledgor's voting rights automatically ceasing but, in fact, led to Pledgor's voting rights being vested in Capital Source, who thereupon gained the sole right to exercise such voting and consensual rights in the Unauthorized Debtors. Capital Source documented its exercise of the right to the voting rights by delivering the Voting Right Exercise Notice to the Borrowers and by passing the Resolutions removing Goldner as the Manager of the Unauthorized Debtors and designating Capital Source as the Manager of the Unauthorized Debtors, all of which occurred prior to the filing of the Chapter 11 Cases.

59.     Goldner's lack of authority to file voluntary chapter 11 petitions constitutes "cause" for relief pursuant to § 1112(b) of the Bankruptcy Code. Accordingly, the Chapter 11 Cases for the Unauthorized Debtors should be dismissed for lack of authority to file.

**B. The Chapter 11 Bankruptcy Cases Should Be Dismissed Because They Are Bad Faith Filings.**

60.     To reiterate, section 1112(b)(1) of the Bankruptcy Code provides in part that "on request of a party in interest, and after notice and a hearing . . . the court shall convert . . . or dismiss a case under [Chapter 11], whichever is in the best interests of the creditors . . . for cause." 11 U.S.C. § 1112(b)(1). Although section 1112 sets forth numerous criteria to dismiss a case, a bad faith filing is not among them. Even so, courts have consistently found that a bad faith filing constitutes cause to dismiss a case. *In re GEL, LLC*, 495 B.R. 240, 246 (Bankr. E.D.N.Y. 2012). Chief among the reasons for bad faith filings is for the sole purpose of avoiding the consequences of adverse litigation. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997).

61.     *In re C-TC 9th Ave. P'ship* stemmed from the debtor, C-TC, purchasing and managing a distribution center from Norton Company ("Norton"), which included a $2,850,000 note secured by a mortgage on the property.  Due to C-TC failing to make any of its required payments, Norton alleged C-TC breached the note by failing to pay and sought foreclosure of the mortgage on the property.  However, C-TC filed a voluntary chapter 11 petition—automatically staying the foreclosure action.  The United States Bankruptcy Court for the Northern District of New York entered an order dismissing the debtor's bankruptcy case due to, *inter alia*, the chapter 11 petition being filed in bad faith.  It reasoned that the filing was done in bad faith because the "primary function of the petition was to serve as a litigation tactic."  *Id.* at 1309.  Moreover, "the bankruptcy court found that the dispute could be fully resolved in a non-bankruptcy forum."  *Id.*

62.     The Court of Appeals revisited the issue of whether the petition was filed in bad faith; it identified eight factors that tend to indicate a bad faith filing:

(1)     the debtor has only one asset;

(2)     the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)     the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)     the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5)     the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)     the debtor has little or no cash flow;

(7)     the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8)     the debtor has no employees.

*Id*. at 1311 (citation omitted). While no single factor is dispositive, these factors assist the court in assessing the totality of the circumstances.  Based on the eight factors, the Court of Appeals held the bankruptcy court did not abuse its discretion in dismissing C-TC's petition for bad faith.

63.     Here, Goldner admits the Chapter 11 Cases were filed solely to thwart Capital Source's ability to enforce the Notes and Capital Source's impending foreclosure on the Pledged Equity Interests in Debtors.  Goldner Decl. ¶ 54.  This alone creates a threshold issue for a bad faith filing deserving of dismissal.  *See In re Encore Prop. Mgmt. of W. New York, LLC*, 585 B.R. 22, 30–31 (Bankr. W.D.N.Y. 2018) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." (internal citations omitted)).

64.     Additionally, the Debtors' failure to file any first day motions or seek any affirmative relief to support their Chapter 11 Cases strengthens the argument that Debtors filed the

petitions not to reorganize, but to block the UCC Sale of the Pledged Membership Interest. There can be no form of reorganization if the Debtors cannot even take the initial steps necessary as part of the bankruptcy process.

65.     Moreover, at least two of the *C-TC* factors establish it is appropriate for the Court to find it is in the best interests of the creditors to dismiss the Chapter 11 Cases for bad faith. To start, the fourth factor, the debtor's financial condition based on a two-party dispute, supports Capital's argument that Debtors do not genuinely intend to reorganize.  Debtors' financial situation is entirely—and not just in essence—a two-party dispute between Debtors and Capital that can and should be resolved in the pending court action. The record establishes the Debtors' financial difficulties relate entirely to the dispute between the Debtors and Capital arising from the Debtors' default on the Notes.  This Court appears to be little more than a new locale for continuing the same dispute.

66.     The fifth factor, intent to frustrate or delay the actions of the Debtors' secured creditor, further demonstrates Goldner filed in bad faith. On September 27, 2024, Capital's counsel sent Goldner, Goldner Capital, and Flagstar Bank a Notice of Disposition outlining Capital Source's intent to complete on or after October 7, 2024, the UCC Sale of Goldner's right, title, and interest in his one hundred percent membership interest of GCM as pledged and detailed in the Pledge Agreement and evidenced by the copies of the Certificates.  On the same date, Capital's counsel sent Goldner, Goldner Capital, and Flagstar Bank a Notice of Disposition outlining Capital Source's intent to complete on or after October 7, 2024 the UCC Sale of Goldner Capital's right, title, and interest in his one hundred percent membership interest of GCM UP LLC, GCM Wash LLC, and GCM Parkside LLC as pledged and detailed in the Pledge Agreement and evidenced by copies of the Certificates.

67. On October 2, 2024, on the precipice of the UCC Sale, Goldner filed the Chapter 11 Cases. This is no coincidence and is a deliberate act to block Capital Source's rights to dispose of its collateral upon properly noticed Events of Default. Ultimately, the timing of Debtors' filings evidences an intent to delay or frustrate Capital Source's legitimate effort to enforce the Notes and Pledge Agreement.

68. Furthermore, pursuant to sections 105(a) and 349(a) of the Bankruptcy Code, a chapter 11 case may be dismissed with prejudice to future filings. *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 239 (Bankr. E.D.N.Y. 2021) (reasoning that due to "Debtor's successive bankruptcy filings on the eve of scheduled foreclosure sales . . . as well as its use of the bankruptcy process merely as a platform to delay the lawful exercise of state law rights," dismissing the case with prejudice is warranted). Analogous to *In re D&G Constr. Dean Gonzalez, LLC*A, a dismissal with prejudice is appropriate here because Debtors do not genuinely intend to reorganize but instead avoid the litigation regarding enforcement of the Notes and Pledge Agreement.

69. Accordingly, the Court should conclude that the filings were done in bad faith and dismiss the cases with prejudice.

**II.    Equity Supports the Court Enter an Order to Show Cause as to Why Goldner and Debtors' Counsel Should Not Be Sanctioned for Knowingly Filing the Chapter 11 Petitions Without Authority and In Bad Faith.**

70. Under U.S.C. § 105(a), the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *see also In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005). This includes sanctions. *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. at 240.

71.     Sanctions pursuant to Bankruptcy Rule 9011 is adopted from Rule 11 of the Federal Rules of Civil Procedure.  If an opposing party seeks sanctions, the opposing party must generally comply with the "safe harbor" provision of Bankruptcy Rule 9011 by providing the allegedly offending attorney with a copy of the motion at least twenty-one (21) days before filing the motion for sanctions under Bankruptcy Rule 9011. *See* Fed. R. Bankr. Pro. 9011(c).

72.     However, the "safe harbor" provision does not apply if the sanctionable conduct is the filing of a bankruptcy petition in violation of Rule 9011(b*). In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. at 241.  Here, Goldner and Debtors' counsel filed the Chapter 11 Cases despite knowing Goldner did not have the authorization to do so; this is in direct conflict with Rule 9011(b), which states, in relevant part, that filing is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the petition "is not being presented for any improper purpose."  *See* Fed. R. Bankr. Pro. 9011(b).

73.     Additionally, bad faith filing constitutes an improper purpose pursuant to Bankruptcy Rule 9011(b)(1) because Goldner filed to delay or needlessly increase the cost of litigation.  Awarding sanctions pursuant to the "improper purpose" prong of Bankruptcy Rule 9011(b)(1) requires a finding of "subjective bad faith."  *Id*. (citing *In re Parikh*, 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014)).

74.     Once a Bankruptcy Rule 9011(b) violation is found, the Court may impose appropriate sanctions upon the attorneys, law firms, or parties that have violated the Rule. *See* Fed. R. Bankr. Pro. 9011(c).

75.     Here, Goldner, who signed the petitions on Debtors' behalf, and Debtors' counsel, Gary F. Herbst, who also signed the petitions, are sanctionable pursuant to Bankruptcy Rule 9011(b)(1). Each of the related bankruptcies had been filed in anticipation of the UCC Sale.  The

"improper purposes" of the Chapter 11 petitions are (1) Goldner knowingly filing without authorization and (2) Goldner filing in bad faith to unnecessarily delay litigation and prevent Capital Source from exercising its remedies, all while having no intention to reorganize. *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. at 241.

76.     Consequently, the Court should require Goldner, along with Debtors' counsel, to show cause as to why they should not be sanctioned for knowingly filing the Chapter 11 Cases without proper authority and in bad faith.

<u>**Conclusion**</u>

77.     Based on the entire record and for the reasons stated herein, Capital respectfully requests that the Court (a) dismiss the Chapter 11 Cases because Samuel Goldner, an individual who is not the Debtors' agent, filed the bankruptcy petitions despite having no authority to do so and in bad faith, which each constitute "cause" under section 1112(b) of title 11 of the Bankruptcy Code; (b) order Goldner and Goldner's counsel to show cause as to why they filed the petitions without proper authority and in bad faith; and (c) grant such other and further relief as may be just and proper.

Dated: October 14, 2024
      New York, New York

> /s/  Max Schlan
> Max Schlan
> Ren-Ann Wang
> 45 Rockefeller Plaza, Suite 2000
> New York, New York 10111
> Telephone: (646) 825-2330
> Facsimile: (646) 825-2330
> mschlan@gutnicki.com
> rwang@gutnicki.com
>
> *Counsel to Capital*