to the contrary, in no event shall Term SOFR be less than one and one quarter percent (1.25%).

As of the date hereof, all uses of the words "Benchmark Replacement", "Benchmark Replacement Adjustment", "Benchmark Replacement Date", "Benchmark Transition Event", "Benchmark Unavailability Period", "Determination Date", "Effective Rate", Relevant Governmental Body" and "Term SOFR" in each Loan Document shall have the meanings set forth above.

(c)    Section 1.1 Definitions. Effective as of June 1, 2023, the definitions of "Benchmark Replacement Conforming Changes", "Benchmark Transition Start Date", "Early Opt-In Election", "ICE LIBOR", "LIBOR" and "London Interbank Market" set forth in Section 1.1 of the Loan Agreement are hereby deleted in their entireties.

(d)    Interest. Effective as of June 1, 2023, Sections 2.1(c)(iv) through (vii) set forth in the Loan Agreement are hereby deleted in their entireties and replaced with the following:

(iv)    Temporary Unavailability of Benchmark. During any Benchmark Unavailability Period, the Loan shall be converted by Agent to a Loan bearing interest at the Base Rate.

(v)    Benchmark Replacement.    Notwithstanding anything to the contrary herein or in any other Loan-related document, upon the occurrence of a Benchmark Transition Event, Agent shall cause this Agreement to be amended to replace the current Benchmark, effective as of the Benchmark Replacement Date, with a Benchmark Replacement in accordance with the terms of this Section 2.1(c). Any such amendment with respect to a Benchmark Transition Event will become effective at 5:00 p.m. on the fifth (5th) Business Day after the Agent has posted such proposed amendment to all Lenders and the Borrower so long as the Agent has not received, by such time, written notice of objection to such amendment from Lenders comprising a majority of the Lenders.

(vi)    Conforming Changes. In connection with the implementation of Term SOFR or any Benchmark Replacement, the Agent shall have the right to make Conforming Changes from time to time and, notwithstanding anything to the contrary herein or in any other Loan-related document, any amendments implementing such Conforming Changes shall become effective without any further action or consent of any party to this Agreement other than Agent.

(vii)    Notices; Standards for Decisions and Determinations. The Agent will promptly notify the Borrower and all Lenders of (i) any occurrence of any Benchmark Transition Event and its corresponding Benchmark Replacement Date; (ii) the implementation of any Benchmark Replacement; (iii) the effectiveness of any Conforming Changes; and (iv) the commencement or conclusion of any Benchmark Unavailability Period. Any determination, decision or election that may be made by the Agent pursuant to this Section 2.1(c), including any determination with respect to a tenor, rate or adjustment or of the occurrence or non-occurrence of an event, circumstance or

7

90111705v.3

date and any decision to take or refrain from taking any action, will be conclusive and binding absent manifest error and may be made in its sole discretion and without consent from any party hereto other than Agent.

(e)    Interest. Effective as of June 1, 2023, Sections 2.1(c)(viii) through (ix) of the Loan Agreement are hereby deleted in their entireties.

6.    **Reaffirmation of Loan**. Borrower reaffirms its obligations under the Loan Documents, and Borrower acknowledges that it has no claims against Agent or any Lender, or any offsets or defenses with respect to the payment of any sums due under the Note or any other Loan Document, or with respect to the enforcement of the Loan Documents.

7.    **Confirmation of Representations and Warranties**. Except with respect to the Designated Defaults (as defined in the Forbearance Agreement), Borrower hereby (a) confirms that all of the representations and warranties set forth in the Loan Agreement are true and correct, except to the extent any representation or warranty relates to a specific date in which case such representation or warranty shall be true and correct as of such earlier date, (b) covenants to perform its obligations under the Loan Agreement and all other Loan Documents, (c) grants to, and ratified, reaffirms, confirms and approves its prior grant to Lender, of a continuing first priority Lien on and security interest in, upon and to the Collateral, (d) all Collateral remains free and clear of any Liens other than those granted to Lender and Permitted Encumbrances, and (e) specifically represents and warrants to Lender that it has good and marketable title to all of its respective Collateral, free and clear of any lien or security interest in favor of any other Person (other than Permitted Encumbrances). Except with respect to the Designated Defaults (as defined in the Forbearance Agreement), Borrower hereby confirms (i) as of the date hereof, the Loan Agreement and the Loan Documents and security interests and Liens created thereby are in full force and effect, and (ii) no Default or Event of Default has occurred or is continuing under the Loan Agreement or any other Loan Document. Borrower further represents and warrants that (1) the execution, delivery and performance of this Amendment and the other Loan Documents required to be delivered herewith have been duly authorized by all necessary action, (2) it has duly executed and delivered this Amendment and the other Loan Documents to which it is a party, and (3) each of this Amendment, the Loan Agreement and the Loan Documents is a legal, valid and binding obligation of such Person, enforceable against such Person in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings at law or in equity).

8.    **Conditions to Effectiveness**. This Amendment shall become effective as of the date on which each of the following conditions has been satisfied (the "Effective Date"):

(a)    Borrower shall have executed and delivered to Agent this Amendment;

(b)    Borrower shall have caused to be delivered to Agent the Amended and Restated Environmental Indemnity Agreement, duly executed by Borrower, New Operator and Guarantor, in form and substance acceptable to Agent;

8

(c)     Borrower shall deliver to Agent evidence that the Existing Lease Agreement has been terminated, which shall be satisfactory in form and substance to Agent;

(d)     Agent shall have received a copy of the New Lease Agreement, which shall be satisfactory in form and substance to Agent, and copies of all necessary approvals in accordance with all legal requirements;

(e)     Borrower shall have delivered to Agent that certain Subordination and Attornment Agreement dated as of the date hereof, duly executed by an authorized officer of New Operator and Borrower;

(f)     Borrower shall have delivered to Agent a Tenant Estoppel Certificate executed by New Operator and Borrower;

(g)     Borrower shall have delivered to Agent certified copies of New Operator's organizational documents, certificates of good standing and resolutions authorizing the transactions contemplated by this Amendment and any related documents in form and substance acceptable to Agent;

(h)     Borrower shall have delivered to Agent the organizational chart of New Operator;

(i)     New Operator shall have delivered to Agent fully-executed account control agreements in form and substance reasonably acceptable to Agent;

(j)     Agent shall have received, in form and substance acceptable to Agent, all necessary approvals required for New Operator to operate the Facility, including but not limited to, copies of New Operator's current and valid Medicare and Medicaid provider numbers and agreements or other evidence satisfactory to Agent in its sole discretion that such provider numbers and agreements will be issued, and copies of the Facility License of New Operator or other evidence satisfactory to Agent in its sole discretion that such Facility Licenses will be issued;

(k)     Agent shall have received valid certificates of insurance and the endorsements related thereto with respect to New Operator for the policies required pursuant to Section 4.5 of the Loan Agreement as applicable to New Operator, satisfactory to Agent in its sole discretion, and evidence of the payment of all insurance premiums payable for the existing policy period;

(l)     Agent shall have received opinions from New Operator's counsel with respect to the due execution, authority, enforceability of the Loan Documents, any and all other documents executed by New Operator evidencing, securing or otherwise relating to the Loan, and such other matters as Agent may require, all such opinions in form, scope and substance satisfactory to Agent and Agent's counsel in their reasonable discretion;

(m)     Agent or its counsel shall have received such other and further approvals, opinions, documents and information as Agent or its counsel may have reasonably requested, in form and substance satisfactory to Agent and its counsel;

9

(n)    Borrower shall deliver to Agent evidence that the Existing Management Agreement has been terminated, which shall be satisfactory in form and substance to Agent;

(o)    Agent shall have received a copy of the New Management Agreement, which shall be satisfactory in form and substance to Agent, and copies of all necessary approvals in accordance with all legal requirements;

(p)    Borrower shall have delivered to Agent that certain Subordination and Collateral Assignment of Management Agreement dated as of the date hereof, duly executed by an authorized officer of New Operator and New Manager;

(q)    Borrower shall have delivered to Agent certified copies of New Manager's organizational documents, certificates of good standing and resolutions authorizing the transactions contemplated by this Amendment and any related documents in form and substance acceptable to Agent;

(r)    Borrower shall have paid all fees set forth in Section 9 below; and

(s)    all representations and warranties of Borrower contained herein shall be true and correct as of the Effective Date, except to the extent that such representation or warranty relates to a specific date, in which case such representation and warranty was true as of such earlier date, and such parties delivery of their respective signatures hereto shall be deemed to be its certification thereof.

9.    **Fees and Expenses**.  In consideration of Lender extending credit under the Loan Agreement and entering into this Amendment, Borrower shall pay the fees Agent, Agent's counsel, Lender and Lender's counsel incurred in connection with the preparation of this Amendment and the related documents.

10.    **Reference to the Effect on the Loan Agreement**.  Upon the effectiveness of this Amendment, each reference in the Loan Agreement to "this Agreement," "hereunder," "hereof," "herein" or words of similar import shall mean and be a reference to the Loan Agreement as modified by this Amendment.  Nothing herein is intended to impair or limit the validity, priority or extent of Lender's security interests in and Liens upon the Collateral.

11.    **Affirmation**.  Except as specifically modified pursuant to the terms hereof, the Loan Agreement, and all other Loan Documents (and all covenants, terms, conditions and agreements therein), shall remain in full force and effect, and are hereby ratified and confirmed in all respects by Borrower.  Borrower covenants and agrees to comply with all of the terms, covenants and conditions of the Loan Documents, as modified hereby, notwithstanding any prior course of conduct, waivers, releases or other actions or inactions on Lender's part which might otherwise constitute or be construed as a waiver of or amendment to such terms, covenants and conditions.

12.    **No Waiver or Novation**.  The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided in this Amendment, operate as a waiver of any right, power or remedy of Lender, nor constitute a waiver of any provision of the Loan Agreement, the Loan Documents or any other documents, instruments and agreements executed

90111705v.3

or delivered in connection with any of the foregoing. Nothing herein is intended or shall be construed as a waiver of the Designated Defaults (as defined in the Forbearance Agreement) or any other existing defaults or Events of Default under the Loan Agreement or other Loan Documents or any of Lender's rights and remedies in respect of such defaults or Events of Default. This Amendment (together with any other document executed in connection herewith) is not intended to be, nor shall it be construed as, a novation of the Loan Agreement or any of the other Loan Documents. This Amendment cannot be amended without the prior written consent of Lender.

13. **Release**. Borrower, voluntarily, knowingly, unconditionally and irrevocably, with specific and express intent, for and on behalf of itself and all of its respective parents, subsidiaries, affiliates, members, managers, predecessors, successors, and assigns, and each of their respective current and former directors, officers, shareholders, agents, and employees (collectively, "Releasing Parties"), does hereby fully and completely release, acquit and forever discharge each Indemnified Party of and from any and all actions, causes of action, suits, debts, disputes, damages, claims, obligations, liabilities, costs, expenses and demands of any kind whatsoever, at law or in equity, whether matured or unmatured, liquidated or unliquidated, vested or contingent, choate or inchoate, known or unknown that the Releasing Parties (or any of them) has against the Indemnified Parties or any of them (whether directly or indirectly) arising out of this Loan as of the date of this Amendment. Each Borrower acknowledges that the foregoing release is a material inducement to Lender's decision to enter into this Amendment and to agree to the modification made contemplated hereunder.

14. **Loan Document**. The parties acknowledge and agree that this Amendment and all agreements and instruments delivered to Lender in connection herewith shall each constitute a "Loan Document" under the Loan Agreement and the other Loan Documents.

15. **GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF MARYLAND, WITHOUT REFERENCE TO THE CONFLICTS OR CHOICE OF LAW PRINCIPLES THEREOF.**

16. **Headings**. Section headings in this Amendment are included for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

17. **Counterparts**. This Amendment may be executed in counterparts, and all counterparts taken together shall be deemed to constitute one and the same instrument.

**(SIGNATURES APPEAR ON FOLLOWING PAGES)**

90111705v.3

**IN WITNESS WHEREOF**, the parties have caused this Amendment to be executed as of the date first written above.

**BORROWER:**

LHW MASTER TENANT LLC,
a Delaware limited liability company

By: _____
Name: Samuel Goldner
Title: Authorized Person

**AGENT:**

**CAPITAL FUNDING, LLC,**
a Maryland limited liability company

By: _____
Name:
Its:

Laura Deutsch
Director
Capital Funding, LLC

**LENDER:**

**CAPITAL FUNDING, LLC,**
a Maryland limited liability company

By: _____
Name:
Its:

Laura Deutsch
Director
Capital Funding, LLC

Signature Page to First Amendment to Loan Agreement

## ACKNOWLEDGMENT, AGREEMENT, CONSENT
## AND REAFFIRMATION OF GUARANTOR

In connection with this First Amendment to Loan Agreement dated concurrently herewith (the "Amendment"), the undersigned (the "Guarantor") hereby executes this Reaffirmation of Guaranty (this "Reaffirmation") to reaffirm his obligations under that certain Limited Guaranty dated as of October 1, 2021 (the "Guaranty"), executed by Guarantor in connection with that certain Loan Agreement dated as of October 1, 2021, as amended by this Amendment (as amended, the "Loan Agreement"), by and among CAPITAL FUNDING, LLC, a Maryland limited liability company, as Agent, various financial institutions as are, or may from time to time become, parties thereto, as Lenders, and LHW MASTER TENANT LLC, a Delaware limited liability company. The undersigned hereby consents to the terms, conditions and provisions of this Amendment and the transactions contemplated by it. Except as provided above, the Guaranty is unmodified hereby and remain in full force and effect, and the undersigned hereby ratify and confirm the same.

Dated as of:  June 1, 2023

**GUARANTOR:**

_____
SAMUEL GOLDNER, an individual