**<u>EXHIBIT D</u>**

*Recorded in Clay County, Missouri*
**Date and Time: 10/12/2021 at 03:49:25 PM**
**Instrument Number: 2021044435**
**Book: 9202          Page: 24**

Instrument Type: **AS**
Page Count: **13**
Recording Fee:   **$60.00 S**

*Electronically Recorded*

*Katee Porter, Recorder*

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

Title of Document:     Assignment of Rents and Leases

Date of Document:     October 1, 2021

Assignor:     LHW MASTER TENANT LLC, a Delaware limited liability company

Assignor's Address:   525 Chestnut Street, Suite 102, Cedarhurst, NY 11516

Agent:     CAPITAL FUNDING, LLC, a Maryland limited liability company

Agent's Address:     1422 Clarkview Road, Baltimore, Maryland 21209

Legal Description:     See attached page labeled "Exhibit A"

Reference Book and
Page:     N/A

This cover page is attached solely for the purpose of complying with the requirements stated in §§ 59.310.2; 59.313.2 RSMo 2001 of the Missouri Recording Act. The information provided on this cover page shall not be construed as either modifying or supplementing the substantive provisions of the attached document. In the event of a conflict between the provisions of the attached document and the provisions of this cover page, the attached document shall prevail and control.

746071110v.2

**Recording Requested By**
**And When Recorded Mail To:**

Capital Funding, LLC
1422 Clarkview Road
Baltimore, Maryland 21209
Attention: Stephanie Jenifer

## ASSIGNMENT OF RENTS AND LEASES

LHW MASTER TENANT LLC,
a Delaware limited liability company
(as Assignor)

CAPITAL FUNDING, LLC
a Maryland limited liability company
(as Assignee)

Dated: October 1, 2021

Liberty Health and Wellness
2201 Glen Hendren Drive, Liberty, MO 64068

74607110v.2

## ASSIGNMENT OF RENTS AND LEASES

THIS ASSIGNMENT OF RENTS AND LEASES (this "Assignment") made as of October 1, 2021, by and between LHW MASTER TENANT LLC, a Delaware limited liability company (together with its successors and assigns, the "Assignor") and CAPITAL FUNDING, LLC, a Maryland limited liability company, in its capacity as Agent (in such capacity, "Agent") for itself and the other Lenders (as defined below). All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement (defined below).

1. RECITALS

1.1     This Assignment is made as additional security for a loan by Lenders and Agent to Assignor in the principal amount of Seventeen Million Eight Hundred Seventy-Six Thousand Three Hundred Forty and No/100 Dollars ($17,876,340.00) (the "Loan") which Loan is made pursuant to that certain Loan Agreement dated of even date herewith (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Loan Agreement") by and among Assignor, Agent and the other financial institutions who are or hereafter become parties to the Loan Agreement (together with Agent, collectively or individually, as the context may require, referred to herein as "Lender" or "Lenders"); and evidenced by that certain Promissory Note dated the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time. the "Note"), made by Assignor in favor of Lender in the principal amount of the Loan, and secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated of even date herewith made by Assignor in favor of Agent for the benefit of Lenders (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "Security Instrument") and as security for certain other Loan Obligations (as defined in the Loan Agreement). The Loan is secured in part by the real property in Liberty, Missouri, as more particularly described on Exhibit A attached hereto and the improvements and certain personal property now or hereafter located thereon (collectively, the "Property").

1.2     Definitions. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.

2. GRANTING CLAUSES

2.1     In consideration of the sum of Ten and no/100 Dollars ($10.00) and other good and valuable consideration and to secure the payment of the Note and any and all renewals, extensions, modifications, and replacements thereof, and to assure performance of the agreements contained herein and in the Loan Documents, Assignor hereby absolutely and unconditionally assigns and grants to Lender Assignor's right, title and interest in and to the following:

(a)     That certain Lease Agreement dated as of the date hereof by and between Assignor (as Landlord or Lessor) ("Landlord"), and LHW OP LLC, a Delaware limited liability company (as Tenant or Lessee) ("Lessee") with respect to the Facility (as defined in the Security Instrument), together with any other oral or written leases, ground leases, subleases, licenses,

concessions, occupancy agreements and other agreements for the use or occupancy of the Property or any portion thereof, made or agreed to by, any person or entity and any and all amendments, extensions, renewals, modifications and replacements thereof pertaining to all or any part of the Property, or any possessory interest therein, whether such leases or other agreements have been heretofore or are hereafter made or agreed to (such leases and other use and occupancy agreements being collectively referred to herein as the "Leases");

(b)     The rents, issues and profits and any other payments by any and all lessees under the Leases in addition to rent (collectively, the "Rents") which may hereafter become due pursuant to any of the Leases pertaining to all or any part of the Property;

(c)     Any and all moneys, awards or other payments made or payable by any and all lessees under the Leases in lieu of rent, including, but not limited to, any damages (all such moneys, awards or payments, including, but not limited to, damages, are collectively referred to herein as the "Damages") which may hereafter become due pursuant to any of the Leases pertaining to all or any part of the Property;

(d)     Any and all guaranties (collectively, the "Guaranties") of any of the Leases, and the rights, powers, privileges, and other benefits of the Assignor under the Guaranties;

(e)     All rights, powers, privileges, options and other benefits (collectively the "Rights") of Assignor under the Leases, including without limitation of the foregoing:

(i)     the immediate and continuing right to receive and collect all insurance proceeds, condemnation awards, moneys and security deposits or the like pursuant to any of the provisions thereof, whether as rents or otherwise (except sums payable directly to any person other than the lessor thereunder);

(ii)     the right to make all waivers and agreements, including waivers of obligations of lessees;

(iii)     the right to give all notices, permissions, consents and releases, including consent to the subordination of the interest of a lessee;

(iv)     the right to take such action upon the happening of a default under the Leases (including the commencement, conduct and consummation of proceedings at law or in equity) as shall be permitted under any provisions of the Leases or by law;

(v)     the right to do any and all other things whatsoever which Assignor is or may become entitled to under the Leases;

(vi)     the right to exercise any option required or permitted;

and during an Event of Default and to the extent permitted by law. Assignor hereby authorizes

2

74607110v.2

Agent:

      (1)     to manage the Property and let and relet the Property, or any part thereof according to Agent's own discretion;

      (2)     to prosecute or defend any suits in connection with the Property in the name of any or all of Lenders or Agent or Assignor as it may consider desirable;

      (3)     to enforce or take any other action in connection with the Leases in the name of any or all of Lenders, Agent or Assignor;

      (4)     to make such repairs to the Property as Agent may deem reasonably advisable; and

      (5)     to do anything in or about the Property that Agent may deem reasonably advisable or that the Assignor has the right or power to do.

**TO HAVE AND TO HOLD** unto Agent, for its benefit and the benefit of Lenders, its successors and assigns, forever, subject to and upon the terms set forth herein.

2.2     Although this instrument constitutes a present assignment of the foregoing Leases, Rights, Rents, Guaranties, Damages, interests and privileges, Assignor shall have the right and license to collect and use all rentals due under the Leases, and, subject to the covenants and restrictions on Assignor contained in Section 3 and the other sections or paragraphs of this Assignment, to exercise the Rights herein, provided, however, that such license shall be revoked upon the occurrence of an Event of Default and during the continuation thereof.

## 3. COVENANTS

3.1     No Other Assignment. Assignor warrants, represents, and covenants that (a) it is the sole owner of the entire lessor's interest in the Leases and has full right to assign the Leases and the rents due or to become due thereunder, (b) there has been no previous and, without Agent's prior written consent as to form and substance, Assignor will permit no future subleases, encumbrances or assignment (as collateral or otherwise) of the Assignor's right, title, and interest in any of the Leases, that the Leases are in full force and effect in accordance with their terms and have not been altered, modified, or amended in any manner whatsoever, except as otherwise disclosed to Agent, that, (c) neither Assignor nor to Assignor's knowledge, the lessees are in default under the Leases nor to Assignor's knowledge has any event occurred which would with the passage of time become a default, (d) to Assignor's knowledge, the lessees have no defenses, setoffs, or counterclaims against the lessor under the Leases, (e) no rent reserved in the Leases has been assigned or anticipated, and (f) no rent for any period subsequent to the date hereof has been collected for more than one month in advance of the time when the said rent becomes or would become due under the terms of the Leases except for security deposits and except as otherwise disclosed in writing to Agent by Assignor.

74607110v.2

3.2     Management. At all times until this Assignment is released, or until the assignment granted hereby is exercised by Agent, and at all times thereafter during which Agent is not in actual or constructive possession of the Property, Assignor shall cause the Property to be managed in accordance with sound business practices and cause to be performed all obligations imposed upon the lessor under the Leases and not do or permit to be done anything to impair the security thereof. Assignor shall not collect any of the Rents in advance, except security and similar deposits and that monthly rent due and payable under the Leases may be collected for each current month in advance. Assignor shall not terminate or alter, modify, amend, or change in any manner any of the terms of any of the Leases or the Guaranties, or give any consent, concession, or waiver under any of the Leases, or exercise any option available to the lessor under the Leases in the event of casualty damage or condemnation affecting the Property, or accept the surrender thereof or consent to any assignment or subletting under any of the Leases, or convey or transfer or suffer or permit a conveyance or transfer of the premises demised by any or all of the Leases or of any interest therein so as to effect directly or indirectly, promptly or remotely, a merger of the estates and rights of, or a termination or elimination of, the obligations of lessees thereunder, without the prior written consent of the Agent, in Agent's sole and absolute discretion. Assignor shall not make any other assignment of any interest in the Leases or the Rents accruing from such Leases or from the Property, or subordinate any of the Leases to any security deed, mortgage, or other encumbrance, or permit, consent, or agree to such subordination without the prior written consent of the Agent in Agent's sole and absolute discretion. Except to the extent that Assignor is acting in the ordinary course of business and to the extent commercially reasonable, Assignor shall cause prompt action, including legal proceedings, for enforcement of any of the Leases and all other remedies available to lessor thereunder to be commenced against any delinquent or defaulting lessee as soon as reasonably necessary to protect such lessor's interest or promptly upon written request from Agent, and in the event Agent requests that such a specific action be taken, to use all commercially reasonable efforts to cause such action to be taken promptly. Assignor shall execute and deliver, at the written request of Agent, all such further assurances and assignments as Agent from time to time shall reasonably require. If Assignor becomes aware that any lessee proposes to do, or is doing, any act or thing that may give rise to any right of set-off against rent, Assignor shall take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, notify Agent thereof and of the amount of said set-offs, and within ten (10) days after such accrual, reimburse the lessee who shall have acquired such right to set-off or take such other steps in furtherance of the effective discharge of such set-off (and diligently pursues same to completion) and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

3.3     Execution of Leases. Except as herein permitted or except for the admission of patients or residents to the Facilities, as permitted by the Loan Agreement, Assignor shall not permit any leases to be made hereafter of all or any portion of the Property except with Agent's prior written consent, which consent is in Lender's sole and absolute discretion. Assignor, at Lender's request, shall furnish Agent with executed copies of all Leases now existing or hereafter made by Assignor. All Leases shall be in form and substance reasonably satisfactory to Agent. All Leases of non-residential space for terms greater than one month shall specifically provide (a) that they are subordinate to the Security Instrument, (b) that the lessee shall attorn to Lenders

4

74607110v.2

and/or Agent effective upon Agent or Lenders acquisition of title to the Property, (c) that the lessee agrees to execute such further evidences of attornment as Agent may from time to time request, (d) that the attornment of the lessee shall not be terminated by foreclosure, and (e) that Agent and/or Lenders  may, at Agent and/or Lender's option, accept or reject such attornment. Assignor shall furnish, from time to time at Agent's request, a rent schedule for the Property, certified by Assignor, showing the name of each lessee and, for each lessee, the space occupied, the lease expiration date, the amount of the security deposit and the rent paid.

        3.4     Notice of Landlord's Default. Assignor shall cause notice to be given to Agent of any notice of default by the lessor under any of the Leases, promptly upon the receipt of notice of such default, but (where such defaults include a cure period) in all events in sufficient time to afford to Agent an opportunity to cure any such default prior to the lessee under the subject Lease having any right to terminate the Lease by reason of such default.

        3.5     Agent and Lenders to be Creditor of Lessee. To the extent permitted by law, Agent and Lenders shall be deemed to be the creditor of each lessee in the Leases in respect of any and all claims for Damages, assignments for the benefit of creditors and bankruptcy, reorganization, insolvency, dissolution or receivership proceedings affecting such lessee (without obligation on the part of Lenders or Agent, however, to file or make timely filings of claims in such proceedings or otherwise to pursue creditor's rights therein). Assignor hereby assigns to Agent, for its benefit and the benefit of Lenders any and all Damages and any and all money received in connection with such assignment for the benefit of creditors or in any such bankruptcy, reorganization, insolvency, dissolution or receivership proceedings, with Agent and Lenders to receive such Damages and monies and hold them in escrow for the purposes of applying Damages or any money received by Lenders and/or Agent as such creditor in payment of the principal and interest installments secured by or to be paid under the Loan next falling due. To the extent permitted by law, Assignor hereby appoints Agent and Lenders as its irrevocable attorney-in-fact to appear in any action and/or collect any such money, award or payment.

## 4. DEFAULTS AND REMEDIES

        4.1     Defaults. The occurrence of an Event of Default under the Loan Agreement or any of the other Loan Documents shall constitute an Event of Default hereunder.

        4.2     Exercise of This Assignment of Rents and Leases.

        (a)     Agent may exercise the assignment hereby granted upon the occurrence and during the continuation of any Event of Default and pursue its rights to collect the Rents or manage the Property (to the extent permitted by law), or both, and otherwise exercise its rights as provided in this Assignment without regard to the adequacy of the security and without waiving any other remedy available to Lenders and Agent without waiving such Event of Default.

        (b)     In the event Agent elects to invoke any of its rights hereunder, and thereafter for any reason relinquishes to the Assignor such rights, this Assignment shall in no respect be terminated but instead remain in full force and effect until the indebtedness represented by the

Note is paid in full, it being the intent of the parties that Agent and Lenders, from time to time upon the occurrence and during the continuation of any Event of Default under this Assignment, shall have all the rights granted hereby.

4.3    Nature of Remedies.  No delay or omission on the part of Agent or Lenders in the exercise of any remedy for an Event of Default shall operate as a waiver thereof. The remedies available to Agent and Lenders under this Assignment shall be in addition to, and exercisable in any combination with, any and all remedies available by operation of law and under the Note and the other Loan Documents. The said remedies shall be cumulative and concurrent, may be pursued separately, successively or together against Assignor or the Property, or either of them, at the sole discretion of Agent and may be exercised as often as occasion therefor shall arise.

4.4    Application of Rents.  Agent shall have the power to apply the Rents and Damages in such order as Agent may determine, to the payment of the indebtedness represented by the Note, including without limitation the payment of all advances and reasonable expenses incurred by Lender under the Security Instrument and all expenses for the care and management of the Property, including taxes, insurance (as required by the terms of the Loan Agreement), assessments, usual and customary commissions to a real estate broker for leasing real estate and collecting rents, and the reasonable expenses and fees of all attorneys, agents, and servants, which expenses Agent may reasonably deem to be necessary to exercise the powers granted to the Lenders and Agent hereunder (subject however, to the terms of the Loan Agreement).  The receipt by Agent of any Rents pursuant to this Assignment following an Event of Default and the exercise of any remedies provided for in the Note or the other Loan Documents shall not cure such Event of Default or affect or prejudice the exercise of such remedies.

4.5    Limitation of Agent's Obligations.  Agent's obligations as to any Rents actually collected shall be discharged by application of such Rents for the purposes described in this Assignment.  Agent shall not be liable for uncollected rents or for any claim for damages or set-offs arising out of Agent's management of the Property other than for damages arising from Agent's gross negligence or willful misconduct.  Agent shall not be liable to any lessee under the Leases for the return of any security deposit made under any Lease of any portion of the Property unless Agent shall have received such security deposit from the lessor of such lessee.  Agent shall not by reason of this Assignment or the exercise of any right granted herein be obligated to perform any obligation of the lessor under any of the Leases, nor shall Agent be responsible for any act committed by the lessor or any breach or failure to perform by the lessor with respect to any of the Leases.  Nothing contained herein shall be deemed to have the effect of making the Agent a mortgagee in possession of the Property or any part thereof.

4.6    Reimbursement.  Assignor shall reimburse, indemnify, and hold harmless Lenders and Agent for and from any and all reasonable expenses, losses, damages, and liabilities which Lenders and Agent may incur by reason of this Assignment, or any of the rights granted in this Assignment, except for any such expense, loss, damage or liability caused by Agent's gross negligence or willful misconduct.  Any and all amounts due to Lenders and Agent under this Section 4.6 shall be immediately due and payable following written notice to Assignor, and shall

6

be added to the principal amount of the Notes and secured by this Assignment and the other Loan Documents.

4.7    Authorization to Lessees.  Each present and future lessee under any of the Leases is hereby authorized and directed to pay the rent payable thereunder to Agent upon written demand from Agent stating that an Event of Default has occurred and is continuing under this Assignment without inquiry as to whether any such Event of Default has occurred or whether Agent is rightfully entitled to such rent.

5. MISCELLANEOUS

5.1    Modification of Loan Terms.  If the time of payment of all indebtedness secured hereby or any part thereof be extended at any time or times, or if the Loan is renewed, modified, or replaced, or if any security for the Loan is released, Assignor and any other parties now or hereafter liable therefor or interested in the Property shall be held to consent to such extensions, renewals, modifications, replacements, and releases, and their liability and the lien hereof and of the other Loan Documents shall not be released and the rights created hereby and thereby shall continue in full force, the right of recourse against all such parties being reserved by Lenders and Agent.

5.2    Successors and Assigns.  This Assignment shall inure to the benefit of and be binding upon the respective successors and assigns of Assignor and Lender and all persons and entities (including owners and lessees) which may hereafter obtain any interest in the Property.

5.3    Notices.  The provisions of the Loan Agreement concerning the giving and receipt of notices shall apply to any notice or other communication given under this Assignment.

5.4    Governing Law.  This Assignment shall be governed by and construed in accordance with the laws of the State of Missouri.

5.5    Severability.  If any term, restriction or covenant of this Assignment is deemed illegal or unenforceable, all other terms, restrictions and covenants and the application thereof to all persons and circumstances subject hereto shall remain unaffected to the extent permitted by law; and if any application of any term, restriction or covenant to any person or circumstances is deemed illegal or unenforceable, the application of such term, restriction, or covenant to any other persons or circumstances shall remain unaffected to the extent permitted by law.

5.6    Termination.  Upon the indefeasible payment in full of the Debt, this Assignment shall terminate whereupon Agent shall deliver a termination of this Assignment in proper form for recording.

5.7    Waiver of Jury Trial.  **ASSIGNOR AND LENDER BY ACCEPTANCE HEREOF, WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS ASSIGNMENT OR THE**

74607110v.2

**LOANS, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR ASSIGNOR WITH RESPECT TO THE LOANS DOCUMENTS OR IN CONNECTION WITH THIS ASSIGNMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS ASSIGNMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  ASSIGNOR AGREES THAT LENDER MAY FILE A COPY OF THIS ASSIGNMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED AGREEMENT OF ASSIGNOR IRREVOCABLY TO WAIVE ITS RIGHTS TO TRIAL BY JURY AS AN INDUCEMENT OF LENDER TO MAKE THE LOANS, AND THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY DISPUTE OR CONTROVERSY WHATSOEVER (WHETHER OR NOT MODIFIED HEREIN) BETWEEN ASSIGNOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

END OF TEXT ON THIS PAGE
SIGNATURE ON FOLLOWING PAGE

74607110v.2

**IN WITNESS WHEREOF,** the undersigned has caused this instrument to be executed by its duly authorized representative on the day and year first above written.

ASSIGNOR:

LHW MASTER TENANT LLC,
a Delaware limited liability company

By: _____
Name: Samuel Goldner
Title: Authorized Person

## NOTARY ACKNOWLEDGMENT

State of New York               )
County of __Nassau__       ) ss.:

On the __17__ of __September__, 2021, before me, the undersigned, personally appeared __Samuel Goldner__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____, Notary Public
Print Name: Warren Fendrich

(SEAL)

WARREN FENDRICH
Notary Public - State of New York
NO. 01FE6399629
Qualified in Queens County
My Commission Expires Oct 28, 2023

Signature Page to Assignment of Rents and Leases

AGENT:

**CAPITAL FUNDING, LLC,**
a Maryland limited liability company

By: _____
Name:
Title:

STATE OF MARYLAND          :
                                           :SS
CITY/COUNTY OF BALTIMORE  :

ON THIS, the __21__ day of __September__, 2021, before me, the undersigned Notary Public of said State, personally appeared ___Jennifer Loucks___, who acknowledged him/herself to be the _Vice President_ (title) of Capital Funding, LLC, a Maryland limited liability company, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized signatory of said limited liability company by signing the name of the limited liability company by him/herself as _Vice President_ (title).

WITNESS my hand and Notarial Seal.

_____, Notary Public
Name: ___Michelle Dorer___

My Commission Expires: __July 15, 2025__

(SEAL)

**MICHELLE N. DORER**
NOTARY PUBLIC
Baltimore County
State of Maryland
My Comm. Expires July 15, 2025

Signature Page to Assignment of Rents and Leases

## EXHIBIT A

### LEGAL DESCRIPTION

All of Lot 1, LIBERTY TERRACE FIRST PLAT, a subdivision in Liberty, Clay County, Missouri, according to the recorded plat thereof.

FOR INFORMATION ONLY:
Address: 2201 Glenn Hendren Drive, Liberty, MO, 64068-3375
Parcel No. 11-703-00-01-002.00

74607110v.2