which might reasonably be expected to have a material adverse effect on its business or assets. Operator is not in violation of any order, judgment, or decree of any court, or any statute or governmental regulation to which it is subject. "Reimbursement Contracts" as used herein shall mean, with respect to the Facility, all contracts and rights pursuant to reimbursement or Third-Party Payor Programs and contracts for the Facility which are now or hereafter in effect with respect to residents qualifying for coverage under the same, including, but not limited to, Medicare, Medicaid, any successor program or other similar reimbursement program (whether operated by a Governmental Authority or quasi-governmental agency or by a private Person) and private insurance agreements. "Third-Party Payor Programs" as used herein shall mean Medicare, Medicaid, Blue Cross and/or Blue Shield, and any other private commercial insurance managed care and employee assistance program. "Governmental Authority" as used herein shall mean any board, commission, carrier, intermediary, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Borrower, Operator, Manager, Facility, the Property and/or the Improvements or the use, operation or improvement of the Property.

(j)     Operator has filed all federal, state, and local tax returns which it is required to file and has paid, or made adequate provision for the payment of, all taxes which are shown pursuant to such returns or are required to be shown thereon or to assessments received by Operator, including, without limitation, provider taxes. All such returns are complete and accurate in all respects. Operator has paid or made adequate provision for the payment of all applicable water and sewer charges, ground rents (if applicable) and Taxes with respect to the Property.

(k)     Operator has not changed its legal name, been known by any other name or been a party to a merger, reorganization or similar transaction within the last five (5) years.

(l)     Operator is solvent for purposes of 11 U.S.C. §548, and the borrowing of the Loan will not render any Operator insolvent for purposes of 11 U.S.C. §548.

(m)     All of the terms and provisions of this Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns. Agent or Lenders may share with any Affiliates, any and all financial and other information about Operator obtained by Agent or any Lender in connection with the Loan, and the Operator hereby authorizes such information sharing. Operator acknowledges and agrees that such shared information may include "financial records" as defined in Section 1-301(c) of the Financial Institutions Article of the Code of Maryland.

(n)     Operator shall not assign, delegate or otherwise transfer any of its rights or other obligations hereunder or under any other Operator Loan Document without the prior written consent of Agent and each Lender.

(o)     Operator shall timely provide all financial statements and other information requested by the HUD Lender, otherwise cooperate with the HUD Lender with respect to the HUD

7

95499747v.6

Financing and the application therefore in all respects, and execute, acknowledge, certify and deliver all instruments of any kind or character reasonably required for the HUD Financing application of the HUD Financing. Operator shall cooperate to accommodate the reasonable requirements of the closing process for the HUD Financing. "HUD Financing", as used herein, means financing granted through a program insured by HUD which financing is secured by a first mortgage lien on such Property in favor of the HUD Lender and consistent with any commitment letter or as otherwise provided in this Agreement. "HUD Lender", as used herein, means Agent, or any Affiliate of Agent.

(p)     Operator hereby acknowledges and agrees that following the occurrence and during the continuation of an Event of Default under the Assignment of Rents or any of the other Loan Documents, Agent may require Operator, to the extent it is not already doing so, to make rent payments under the Lease directly to Agent, for the benefit of Lenders. Operator covenants and agrees that upon receipt of written notice from Agent, Operator shall pay all Rents directly to Agent, for the benefit of Lenders, and not to Landlord or any other Person other than as directed by Agent, it being understood that a demand by Agent on the Operator for the payment of Rent shall be sufficient to warrant payment by Operator without the necessity of further consent by Landlord.

(q)     Operator shall not, without Agent's prior written consent, close or suffer or permit to be closed the government and commercial receivables accounts of Operator or maintain any other deposit accounts.

(r)     Except for the Permitted Encumbrances, Operator shall not:  (a) permit or suffer the Transfer of any of the ownership interests of Operator or (b) permit or suffer any other Transfer. "Transfer" means the conveyance, assignment, sale, transfer, mortgaging, collateral assignment, encumbrance, pledging, alienation, hypothecation, granting of a security interest in, granting of options with respect to, or other disposition of (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record) all or any portion of any legal or beneficial interest (i) in all or any portion of the real or personal property of Operator; (ii) in a member of Operator; or (iii) in Operator, or, (iv) in any Person having a direct or indirect legal or beneficial ownership in the Operator, including any legal or beneficial interest in any constituent limited partner or member of the Operator whether directly or through multiple tiers of ownership. The term "Transfer" shall also include, without limitation, the following: an installment sales agreement wherein Operator agrees to sell any real or personal property of Operator, or any part thereof or any interest therein, for a price to be paid in installments; an agreement by Operator leasing all or a substantial part of any real or personal property of Operator to one or more Persons pursuant to a single transaction or related transactions, or a sale, assignment or other transfer of, or the grant of a security interest in, Operator's right, title and interest in and to the Lease; the dissolution or termination of Operator, or a member of Operator; or the merger or consolidation with any member of Operator. "Permitted Encumbrances" as used herein shall mean the items specified in Exhibit B.

8

(s)   Operator shall not alter or change the use of the Facility except as permitted under the Lease or permit the termination or amendment of any management agreement for the Facility without the prior written consent of Agent.

8.   <u>Subordination of Lease to Security Instrument and Regulatory Agreements and Regulation by HUD</u>.

(a)   The Lease and all estates, rights, options, liens and charges therein contained or created under the Lease are and shall be subject and subordinate to the lien of (i) the Security Instrument on the Landlord's interest in the Property in favor of Agent, its successors and assigns insofar as it affects the real and personal property comprising the Property (and not otherwise owned, leased or licensed by Operator) or located thereon or therein, and to all renewals, modifications, consolidations, replacements and extensions thereof, and to all advances made or to be made thereunder, to the full extent of amounts secured thereby and interest thereon, and (ii) any Regulatory Agreement that may be entered into between Operator and the U.S. Department of Housing and Urban Development ("HUD") to be recorded against the Property in connection with the HUD Financing (as defined in the Loan Agreement).

(b)   The parties to the Lease agree to execute and deliver to Agent and/or HUD such other instrument or instruments as the Agent and/or HUD, or their respective successors or assigns, shall reasonably request to effect and/or confirm the subordination of the Lease to the lien of the Security Instrument and the above-described Regulatory Agreements. To the extent that any provision of the Lease shall be in conflict with the provisions of the Security Instrument, the Regulatory Agreements or any applicable section of Section 232 of the National Housing Act and/or the March 15, 2002 Multifamily Accelerated Processing (MAP) Guide provisions applicable to Section 232, the provisions of the Security Instrument, the Regulatory Agreements, such sections of Section 232 of the National Housing Act and/or the March 15, 2002 Multifamily Accelerated Processing (MAP) Guide provisions applicable to Section 232, as the case may be, shall be controlling.

9.   Any notice or other communication required or permitted to be given by this Agreement or the other Loan Documents or by applicable law shall be in writing and shall be deemed received: (a) on the date delivered, if sent by hand delivery (to the person or department if one is specified below) with receipt acknowledged by the recipient thereof; (b) three (3) Business Days following the date deposited in U.S. mail, postage prepaid, certified or registered, with return receipt requested; or (c) one (1) Business Day following the date deposited with Federal Express or other national overnight carrier, and in each case addressed as follows:

If to Agent:          Capital Funding, LLC
                      1422 Clarkview Road
                      Baltimore, Maryland 21209
                      Attention: Account Manager - Liberty MO

95499747v.6

| With a copy to: | Seyfarth Shaw LLP<br>560 Mission Street, Suite 3100<br>San Francisco, CA 94105<br>Attention: Robin S. Freeman |
|---|---|
| If to Landlord: | c/o Sam Goldner<br>1180 East 24th Street, 6th Floor<br>Brooklyn, NY 11210 |
| With a copy to: | Fenigstein & Kaufman<br>1900 Avenue of the Stars, Suite 2300<br>Los Angeles, CA 90067-4314<br>Attention: Jack Fenigstein |
| If to Operator: | c/o Vertical Health Services, LLC<br>15406 Meridian Ave E<br>Suite 201<br>Puyallup WA, 98375<br>Attention: William Miller |
| With a copy to: | Lane Powell PC<br>1420 Fifth Avenue, Suite 4200<br>Seattle, WA 98101<br>Attention: Randi S. Nathanson |

Any party may change its or its attorney's address to another single address by notice given as herein provided, except any change of address notice must be actually received in order to be effective.

10.     Operator covenants and agrees that it will not declare or pay any distributions to its shareholders, members or partners, as applicable, or purchase, redeem, retire, or otherwise acquire for value, any of its Stock or ownership interests now or hereafter outstanding, return any capital to its shareholders, members or partners as applicable, or make any distribution of assets to its shareholders, members or partners, as applicable, unless, (a) Operator is then in compliance with the Lease and (b) the making of the distribution, purchase, redemption or return will not cause an Event of Default under the Lease.

11.     Operator represents and warrants that (i) all financial statements heretofore or hereafter provided to Agent by or on behalf of Operator are and will be true and complete in all material respects as of their respective dates and fairly present the respective financial condition

10

95499747v.6

of Operator, and there are no material liabilities, direct or indirect, fixed or contingent, as of the respective dates of such statements which are not reflected therein or in the notes thereto or in a written certificate delivered with such statements; (ii) there has been no material adverse change in the financial condition, operations, or prospects of Operator since the dates of such statements except as fully disclosed in writing with the delivery of such statements; and (iii) all financial statements of the operations of the Facility hereafter provided to Agent will be true and complete in all material respects as of their respective dates, and to the best of Operator's knowledge, all such financial statements provided to Agent are true and correct in all material respects.

12.     Operator warrants, represents and agrees that Operator is a single purpose entity that has not engaged and does not engage in any business other than the leasing and the operation of the Facility.

13.     The agreements contained herein shall run with the land and shall he binding upon and inure to the benefit of the respective successors and assigns of the parties hereto.

14.     This Agreement may be executed in one or more counterparts, all of which when taken together shall constitute a single instrument.

15.     This Agreement shall, in all respects, be governed by and construed and interpreted in accordance with the laws of the State of Missouri.

16.     Operator acknowledges and agrees that Landlord is and shall remain the owner of the furniture, fixtures and equipment in the SNF, other than the Tenant's personal property, as described in the Lease. Operator further acknowledges and agrees that it has been advised by Landlord, whose affiliate previously operated the SNF, that the furniture, fixtures and equipment in the SNF includes all furniture, fixtures and equipment required by all state and federal laws and regulations for (a) the operation of the SNF, (b) the maintenance of the License in good standing, and (c) certification to participate in the Medicare and Medicaid programs. Except as otherwise provided in the Lease, Operator shall have no interest in such furniture, fixtures and equipment other than as tenant thereof for the term of the Lease or sooner termination thereof. Any and all repairs or replacements to the furniture, fixtures and equipment leased by Landlord to Operator under the Lease (as compare to the personal property of Tenant as described in the Lease) during the term of the Lease shall be the property of the Landlord, whether or not Operator has paid for such repairs or replacements.

**[Signatures Begin on Following Page]**

95499747v.6

IN WITNESS WHEREOF, the undersigned have executed this instrument as of the day and year first above written.

**AGENT:**

**CAPITAL FUNDING, LLC,**
a Maryland limited liability company

By: _____

Name:

Title:        Laura Deutsch

           Director

       Capital Funding, LLC

STATE OF MARYLAND        :

                               :SS

CITY/COUNTY OF BALTIMORE   :

ON THIS, the _5th_ day of _June_ , 2023, before me, the undersigned Notary Public of said State, personally appeared _Laura Deutsch_ , who acknowledged him/herself to be the _Director_ (title) of Capital Funding, LLC, a Maryland limited liability company, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized signatory of said limited liability company by signing the name of the limited liability company by him/herself as _Director_ (title).

WITNESS my hand and Notarial Seal.

_____ , Notary Public

Name: _Rachel O'Donnell_

My Commission Expires: _3/9/2024_

(SEAL)

RACHEL M. O'DONNELL
MY COMMISSION EXPIRES
NOTARY
PUBLIC
MARCH 09, 2024
BALTIMORE COUNTY, MD

Signature Page to Subordination and Attornment Agreement

**OPERATOR:**

GLEN HENDREN DRIVE HEALTHCARE LLC,
a Delaware limited liability company

By: _____
Name: William Miller
Title: Manager

**NOTARY ACKNOWLEDGMENT**

STATE OF WASHINGTON       )
                 ) ss.
COUNTY OF King _____  )

   On this 8TH day of June _____, 20 23 before me, Alaena Ponce _____, Notary Public, personally appeared William Miller, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

   WITNESS my hand and official seal.

_____
Notary Public

Signature Page to Subordination and Attornment Agreement

**LANDLORD:**

LHW MASTER TENANT LLC,
a Delaware limited liability company

By: _____
Name: Samuel Goldner
Title: Authorized Person

## NOTARY ACKNOWLEDGMENT

State of New York         )
County of _Queens_     ) ss.:

On ___June 1st___ , 2023, before me, the undersigned, personally appeared

_____Samuel Goldner_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____, Notary Public
Print Name:

(SEAL)

```
BENJAMIN WEISS
Notary Public - State of New York
NO. 01WE6443839
Qualified in Queens County
My Commission Expires Nov 14, 2026
```

Signature Page to Subordination and Attornment Agreement

## EXHIBIT A

### DESCRIPTION OF LAND

All of Lot 1, LIBERTY TERRACE FIRST PLAT, a subdivision in Liberty, Clay County, Missouri, according to the recorded plat thereof.

FOR INFORMATION ONLY:
Address: 2201 Glenn Hendren Drive, Liberty, MO, 64068-3375
Parcel No. 11-703-00-01-002.00

95499747v.6

## EXHIBIT B

### PERMITTED ENCUMBRANCES

1. That certain Pledge Agreement dated May 31, 2023 from VHS Ultimate Parent, LLC and Vertical Health Services, LLC, a Delaware limited liability company, in favor of The Capital Foresight Limited Partnership, a Nevada limited partnership,

95499747v.6

## EXHIBIT C

## OWNERSHIP CHART OF OPERATOR

95499747v.6

## Vertical Health Services
## Organization Chart



135232.00002