**<u>GROUP EXHIBIT J</u>**

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement") is entered into as of March 29, 2023, by and among Samuel Goldner, an individual (with their successors and assigns, each a "Guarantor" and collectively, jointly and severally, the "Guarantor"), LHW MASTER TENANT, LLC, a Delaware limited liability company (with their successors and assigns, individually and collectively, "Borrower"), CAPITAL FUNDING, LLC, a Maryland limited liability company, as Agent (in such capacity, "Agent") and as a Lender.

### RECITALS

A.      Pursuant to that certain Loan Agreement dated as of October 1, 2021 (as the same has been and may in the future be amended, restated, modified and in effect from time to time, the "Loan Agreement"), Agent and Lenders agreed to make available to Borrower a loan (as amended, modified, supplemented, extended and restated from time to time, the "Loan"). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

B.      The Loan is evidenced by that certain Promissory Note dated as of October 1, 2021 and executed by Borrower in an original principal sum of $17,876,340.00 (the "Note").

C.      The Note is secured by, *inter alia*, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of October 1, 2021 and made by Borrower in favor of and for the benefit of Agent and Lender (the "Security Instrument") and covering the property located at 2201 Glen Hendren Drive, Liberty, MO 64068 (the "Collateral Property").

D.      Pursuant to that certain Limited Guaranty dated as of October 1, 2021 (the "Guaranty"), Guarantor guaranteed the payment of all indebtedness and the performance of Borrower's obligations to Agent and Lender under the Note subject to the limitations set forth therein.

E.      Pursuant to that certain Environmental Indemnity Agreement dated as of October 1, 2022 (the "Environmental Indemnity"), Borrower, LHW OP LLC, a Delaware limited liability company (the "Operator"), and Guarantor each agree to protect, defend, indemnify, release and hold Agent and Lender harmless from and against any and all losses based on any "bad acts" relating to the presence of Hazardous Substances on the Collateral Property or the violation of any Environmental Laws on the Collateral Property as described in more detail therein.

F.      Pursuant to the Loan Agreement, Borrower is required to comply with certain Minimum Debt Yield Percentage and Minimum Fixed Charge Ratio requirements. Borrower has failed to comply with, or cause the compliance with: (i) Section 4.12(b)(i)(C) of the Loan Agreement in that Operator failed to achieve the Minimum Debt Yield Percentage requirements for the test periods ending March 1, 2022, June 30, 2022, September 30, 2022, and December 31, 2022; and (ii) Section 4.1 of the Loan Agreement in that Borrower failed to "duly and punctually pay or cause to be paid the principal and interest of the Note" for the amounts due in March 2023 (together, the "Designated Defaults").

93179912v.2

G.    Notwithstanding the Designated Defaults, Borrower desires for Agent and Lenders to forbear from enforcing its rights and remedies under the Loan Documents (as defined below).

## AGREEMENT

NOW, THEREFORE, in consideration for the agreements, representations, acknowledgements and warranties set forth in this Agreement, each of the Parties hereby agrees, represents, acknowledges, and warrants as follows:

1.    Defined Terms; Interpretive Provisions.

1.1    Certain Defined Terms.  As used herein, the following terms have the corresponding meanings set forth below:

"Effective Date" means the date on which all of the conditions specified in Section 6 of this Agreement are satisfied.

"Forbearance Default" means Borrower's breach of any representation, warranty, or acknowledgement of this Agreement, or failure in any way to completely perform any term, condition, obligation or covenant of this Agreement within the time required therefor, if any.

"Forbearance Expiration Date" means May 29, 2023.

"Forbearance Period" means the period from the Effective Date until the Forbearance Termination Date during which the Agent and Lenders shall forbear from exercising their rights and remedies with respect to the Designated Defaults.

"Forbearance Termination Date" means the earlier of (a) the date of occurrence of a Forbearance Termination Event, and (b) the Forbearance Expiration Date.

"Forbearance Termination Event" means the occurrence of any of the following:  (a) a Forbearance Default; (b) any default under any of the Loan Documents other than the Designated Defaults; (c) any Material Adverse Change to Borrower; (d) any of the Loan Documents shall for any reason cease to be in full force and effect in accordance with their terms, or their validity or enforceability shall be contested by any party thereto; (e) a material judgment adverse to Borrower shall be entered in any legal proceeding; (f) any property belonging to any Borrower, or any material part thereof, is taken by execution, levy, attachment, forfeiture, sequestration or other process of law (other than in the nature of eminent domain); or (g) any Borrower shall (i) execute an assignment for the benefit of creditors, or (ii) become or be adjudicated a bankrupt, debtor or insolvent under any bankruptcy or insolvency law, or (iii) admit in writing its/ his inability to pay its/ his debts generally as they become due, or (iv) apply for or agree by consent to the appointment of a conservator, receiver, trustee or liquidator of it/ him or of all or a substantial part of its/ his assets, or (v) file a voluntary petition seeking relief under the provisions of title 11, United States Code, or (vi) be the subject of an involuntary bankruptcy case commenced under 11 U.S.C. section 303, or (vii) file an answer admitting the material allegations of or consenting to, or default in, a petition filed against it/ him in any

proceeding under any debtor relief laws, or (viii) institute a voluntary bankruptcy case or be or become a party to any other judicial proceedings intended to effect a discharge of its/ his debts, in whole or in part, or a postponement of the maturity or the collection thereof, or a suspension of any of the rights of Agent and Lenders granted in the Loan Documents or this Agreement.

"Indebtedness," whether such term is capitalized or not, means any and all liabilities, obligations, debts and indebtedness to Agent and Lenders, including principal, interest, costs and expenses for which Borrower is responsible in any capacity, whether arising under any of the Loan Documents or any other loan, note, credit facility, guarantee, instrument or other evidence of indebtedness concerning the Loan.

"Loan Documents" means the Loan Agreement, the Note, the Security Instrument, the Guaranty, the Environmental Indemnity, and all other documents, instruments and agreements that now or hereafter evidence, guaranty or secure the Loan.

"Material Adverse Change" means any change, event or occurrence that, individually or in the aggregate, has a material adverse effect on, or a material adverse change in, (a) the business, operations, financial condition or results of operations of Borrower, and (b) the ability of Borrower to perform its obligations under this Agreement.

"Parties" means Borrower, Guarantor and Agent and Lenders.

1.2     Interpretive Provisions.  The meaning of defined terms shall be equally applicable to the singular and plural forms of the defined terms.  The words "hereof," "herein," "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  The captions and headings of this Agreement are for convenience of reference only and shall not affect the interpretation of this Agreement.  The term "including" is not limiting and means "including without limitation."  Whenever any performance obligation hereunder (other than a payment obligation) shall be stated to be due or required to be satisfied on a day other than a business day, such performance shall be made or satisfied on the next succeeding business day.  In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including;" the words "to" and "until" each mean "to but excluding," and the word "through" means "to and including."

2.     Acknowledgments Concerning Loan and Defaults.

2.1     Truth of Recitals.  Borrower and Guarantor acknowledge the truth and accuracy of the Recitals set forth above.

2.2     Liability for Loan.  Borrower and Guarantor acknowledge and agree that (a) Borrower is indebted to Lenders for repayment of the sums due under the Loan and for payment and performance under the Loan Documents to which it is a party, and (b) Guarantor is liable to Lenders for payment and performance under the Guaranty.

2.3     Status of Indebtedness.

(a)     Borrower acknowledges that, as of the date hereof, the outstanding principal balance of the Loan is $17,8500,085.53, is due and owing and remains unpaid.

93179912v.2

(b)    Borrower and Guarantor hereby ratify all of the Loan Documents to which they are a party and reaffirm all of their obligations with respect to the Loan. Borrower and Guarantor each hereby acknowledge, reaffirm and agree that the Loan Documents, as modified by this Agreement, represent valid and binding obligations of Borrower and Guarantor to Agent and Lenders enforceable according to the terms thereof. Borrower unconditionally owes to Lenders the full amount of the outstanding indebtedness secured by the Security Instrument, including unpaid principal, accrued interest and other fees and charges provided for in the Note and the other Loan Documents. Borrower and Guarantor promise to perform all obligations under the Loan Documents to which they are a party in accordance with the terms thereof.

(c)    There are no existing defenses, claims, counter-claims, counter demands, or rights of setoff or recoupment whatsoever with respect to the Note, the Guaranty or any of the other Loan Documents, or, if Borrower and Guarantor believe that there are, Borrower and Guarantor are waiving and releasing same pursuant to Section 7.

2.4    Acknowledgement and Preservation of Default. Borrower and Guarantor acknowledge, admit and agree that (a) the Designated Defaults are preserved and shall continue in existence, (b) this Agreement does not constitute and shall not be construed as a waiver of the Designated Defaults, (c) any dividends, distributions and redemptions which may be otherwise permitted under Section 5.13 of the Loan Agreement are prohibited unless and until the Designated Defaults have been corrected or the Loan Obligations under the Loan Agreement are fully performed and indefeasibly and irrevocably paid in full in cash and the Loan Documents shall have been terminated, and (d) nothing in this Agreement shall be construed as a waiver by Agent or any Lender of the Designated Defaults, or, except as set forth in Section 5(a) below, Agent's and Lenders' right to assert and enforce the Designated Defaults.

2.5    No Obligation to Forbear. Except as expressly set forth herein, (i) Agent and Lenders have no obligation to modify, extend, or otherwise amend the terms and conditions of the Loan Documents or to negotiate with Borrower or Guarantor or any other person or entity concerning any of the foregoing, and (ii) Agent's and Lenders' execution of this Agreement does not create any such obligation.

3.    Representations and Warranties of Borrower. Each Borrower certifies, represents, warrants and acknowledges that each of the following is true as to itself:

3.1    No Litigation. Except as disclosed by Borrower to Agent in writing, there is no litigation, prosecution, investigation or proceeding of any nature whatsoever now pending or, to the best of Borrower's knowledge, threatened against Borrower that could or might materially and adversely affect performance of any obligations under this Agreement or the other Loan Documents.

3.2    Due Organization. Borrower is a limited liability company, duly formed, validly existing and in good standing under the laws of the State of Delaware. Since the origination of the Loan, there has been no change in the ownership or control of Borrower, and the operating agreements, articles or by-laws, as the case may be, have not been modified or amended in any respect.

3.3     Authority.  Borrower has full power and authority and have been authorized to execute, deliver, and perform this Agreement.  The execution, delivery and performance of this Agreement and the transactions contemplated herein have not resulted and will not result in a breach or violation of any provision of (i) Borrower's organizational documents, (ii) any statute, law, rule or regulation applicable to Borrower, (iii) any judgment, injunction, order, decree, writ or determination applicable to Borrower, or (iv) any contract, agreement or other instrument by which Borrower may be bound or to which any of the assets of Borrower are subject.

3.4     No Breach.  Except for the Designated Defaults, Borrower is not in breach of or in default under any Loan Document to which it is a party, and no Forbearance Default has occurred.

3.5     Financial Statements.  The financial statements that Borrower and Guarantor most recently submitted to Agent are true and complete in all material respects as of their date and fairly represent the financial condition of the respective Borrower and Guarantor.

3.6     Truth of Loan Documents.  All representations and warranties set forth in the Loan Documents are true and correct in all material respects as of the date hereof, except as qualified or limited by this Agreement or as specifically disclosed in writing by a Borrower to Agent.

4.     Occurrence of Forbearance Termination Date.

(a)     If the Indebtedness is paid and satisfied in full before the Forbearance Termination Date, Agent and Lenders will release and reconvey the Security Instrument encumbering the Collateral Property.

(b)     If any portion of the Indebtedness remains unpaid upon the occurrence of a Forbearance Termination Event, then the entire unpaid Indebtedness shall be due and payable in full immediately upon the Forbearance Termination Date and the provisions of Section 5(b) shall apply.

5.     Forbearance; Remedies Upon Forbearance Termination Event.

(a)     Provided that no Forbearance Termination Event occurs, Agent and Lenders shall refrain and forbear during the Forbearance Period from exercising any of the Agent's and/or Lenders' rights and remedies with respect to the Designated Defaults; provided, however, that in no event shall the foregoing be deemed to limit, modify, amend, waive or otherwise affect Agent's or any Lender's rights and remedies that exist by reason of the Designated Defaults, all of which are expressly preserved and may be enforced by Agent in the event the Loan remains outstanding following the Forbearance Termination Date.

(b)     Upon the occurrence of a Forbearance Termination Event, Agent shall be entitled, at its sole option and without further notice to or demand on any Borrower or Guarantor, (i) to terminate its forbearance under this Agreement and, unless the Indebtedness is already due and payable, declare any or all Indebtedness of Borrower and Guarantor immediately due and payable without the expiration of any period of grace, and (ii) to seek all legal recourse against Borrower and Guarantor and pursue and enforce, either successively or concurrently, all rights

93179912v.2