**LaMonica Herbst & Maniscalco, LLP**
*Counsel for the Debtor*
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500
Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:                                                                        Chapter 11

                                                                              Case No. 24-73789 (AST)

GOLDNER CAPITAL MANAGEMENT LLC, <u>et al.</u>,[1]

                                                                              (Jointly Administered)

                                            Debtors.
----------------------------------------------------------------X

# SECOND AMENDED DISCLOSURE STATEMENT OF <u>CHAPTER 11 DEBTOR MISSOURI MT HOLDINGS LLC</u>

**LAMONICA HERBST & MANISCALCO, LLP**
Counsel for Missouri MT Holdings LLC
Chapter 11 Debtor

By: Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.

3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500

---

[1] The jointly administered Debtors are: Goldner Capital Management LLC (24-73789), GCM Manager LLC (24-73790), GCM Parkside LLC (24-73791), GCM UP LLC (24-73792), GCM Wash LLC (24-73793) and Missouri MT Holdings LLC (24-73795) (collectively, the "Jointly Administered Debtors"). LHW Master Tenant LLC (24-73794) ("LHW") is an affiliated debtor (which was formerly a Jointly Administered Debtor and which was severed and deconsolidated from the Jointly Administered Debtors' cases by Order of the Court. SRZ Master Tenant LLC (25-70504) ("SRZ") is an affiliated Debtor (the Jointly Administered Debtors, together with LHW and SRZ, the "Affiliated Debtors").

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN (DEFINED BELOW).  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN OF LIQUIDATION (THE "**PLAN**") PROPOSED BY MISSOURI MT HOLDINGS LLC (THE "**DEBTOR**").  NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, THE VALUE OF ITS ASSETS OR BENEFITS OFFERED UNDER THE PLAN HAVE BEEN AUTHORIZED.

THE APPROVAL OF THE DISCLOSURE STATEMENT MEANS THAT THE BANKRUPTCY COURT HAS FOUND THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT CREDITORS OF THE DEBTOR TO MAKE A REASONABLY INFORMED DECISION IN EXERCISING THEIR RIGHT TO VOTE, IF ANY, UPON THE PLAN.  COURT APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION ON THE MERITS OF THE PLAN.  A COPY OF THE PLAN IS ANNEXED HERETO AS **EXHIBIT "1"** AND DESCRIBED HEREIN.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION WHETHER TO APPROVE THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION; NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.  THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR AND FROM OTHER SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  ALL CREDITORS AND OTHER INTERESTED PARTIES ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THE ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS, BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN.

**TABLE OF CONTENTS**

Page

I  INTRODUCTION ............................................................................................................. 1
    A.    Background ............................................................................................... 1
    B.    The Plan Confirmation Process ............................................................... 1

II  SUMMARY OF PLAN ................................................................................................... 2
    A.    Source of Information ............................................................................... 3

III  HISTORY OF THE CHAPTER 11 CASE .................................................................... 3
    A.    The Debtor's Business and Pre-Petition History ..................................... 3
    B.    Events Leading to the Chapter 11 Filing ................................................ 4
    C.    The Bankruptcy Filing ............................................................................ 4
    D.    Affirmative Claims ................................................................................. 5
    E.    Surplus Proceeds from sale of real estate in the LHW debtor's case .................... 6
    F.    Retention of Professionals ...................................................................... 6
    G.    Claims Bar Date ...................................................................................... 6

IV  THE PLAN OF LIQUIDATION ................................................................................... 7
    A.    Explanation of Chapter 11 ...................................................................... 7
    B.    Claims ...................................................................................................... 8
    C.    Classes Of Claims or Interests ................................................................ 8
    D.    Treatment of Allowed Claims ............................................................... 10

V  IMPLEMENTATION OF THE PLAN .......................................................................... 12

VI  FEASIBILITY ............................................................................................................. 13

VII  CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE
    EFFECTIVE DATE .................................................................................................... 13

VIII  VOTING .................................................................................................................... 13

IX  REQUIREMENT FOR CONFIRMATION OF THE PLAN ....................................... 14
    A.    Confirmation Hearing ........................................................................... 14
    B.    Objections to Confirmation .................................................................. 14
    C.    Acceptance of the Plan .......................................................................... 15
    D.    Confirmation of the Plan ....................................................................... 15

X  EFFECT OF CONFIRMATION; INJUNCTION; EXCULPATION ............................ 15
    A.    Effect of Confirmation .......................................................................... 15
    B.    Injunction .............................................................................................. 15
    C.    Exculpation ............................................................................................ 16

XI  ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS ................... 17
    A.    Alternatives to the Plan ......................................................................... 17
    B.    Best Interests of Creditors ..................................................................... 18
    C.    Liquidation Analysis ............................................................................. 19

XII  RECOMMENDATION OF THE DEBTOR ............................................................... 20

XIII  ADDITIONAL INFORMATION .............................................................................. 20

XIV  TAX CONSEQUENCES.................................................................................................. 20

XV  CONCLUSION ............................................................................................................ 21

# I

## INTRODUCTION

### A.  Background

Missouri MT Holdings LLC (the "Debtor") submits this Second Amended Disclosure Statement (the "Disclosure Statement") pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"), to the creditors of the Debtor (the "Creditors") in connection with the: (i) Debtor's Second Amended Plan of Liquidation dated July 1, 2025 proposed and filed by the Debtor (the "Plan") with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court" or the "Court"); and (ii) hearing on confirmation of the Plan to be scheduled by further notice and/or Order of the Court.  Unless otherwise defined herein, all capitalized terms contained herein will have the meanings ascribed to them in the Plan.

Attached as an Exhibit to and accompanying this Disclosure Statement is a copy of the following:

Exhibit "1" –  The Plan
Exhibit "2" – LLC organizational chart

BALLOTS ARE BEING PROVIDED TO HOLDERS OF CLAIMS AND/OR INTERESTS IN CLASSES 1-3 BECAUSE CLASSES OF IMPAIRED CLAIMS AND/OR INTERESTS ARE PERMITTED TO VOTE ON THE PLAN, WHEREAS, CLASSES THAT ARE UNIMPAIRED ARE NOT ENTITLED TO VOTE AND ARE PRESUMED TO HAVE CONCLUSIVELY ACCEPTED THE PLAN.

### B.  The Plan Confirmation Process

The Bankruptcy Court approved this Disclosure Statement as containing adequate information to permit creditors of the Debtor to make a reasonably informed decision in

exercising their right, if any, to vote upon the Plan.  Approval of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.  Each Creditor should read this Disclosure Statement and the Plan in their entirety.

Pursuant to various provisions of the Bankruptcy Code, only classes of claims that are "impaired" under the terms and provisions of a plan are entitled to vote to accept or reject such plan.

In accordance with Section 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a hearing, pursuant to a separate notice or Order of the Court, to consider confirmation of the Plan (the "Confirmation Hearing"), before the Honorable Alan S. Trust, United States Chief Bankruptcy Judge, in Courtroom 960, at the United States Bankruptcy Court, 290 Federal Plaza, Alfonse M. D'Amato U.S. Courthouse, Central Islip, New York 11722.  Objections, if any, to confirmation of the Plan shall be served and electronically filed with the Bankruptcy Court in accordance with such further notice from and/or Order of the Court.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjourned hearing date made at the Confirmation Hearing or at any subsequent adjourned date.

## II

## SUMMARY OF PLAN

The classification and treatment of Claims under the Plan are set forth in Article IV below.  The Plan is a liquidating plan which provides for payments on Allowed Claims in accordance with the priorities for claims as set forth under the Bankruptcy Code and applicable non-bankruptcy law.

A.      **Source of Information**

The information contained in this Disclosure Statement was prepared by the management of the Debtor, based upon the Debtor's books and records, the Debtor's bankruptcy petition and schedules, and preliminary review of all proofs of claim timely filed with the Bankruptcy Court. The estimates of Claims set forth herein may vary from the final amount of Claims allowed by the Bankruptcy Court, however, the Debtor believes that the figures and dollar amounts reflected herein are reasonably accurate according to currently filed claims and scheduled debts of creditors that have not filed a proof of claim. While every effort has been made to ensure the accuracy of all such information, the information presented herein is unaudited and has not been examined, reviewed, or compiled by an independent public accountant.

### III

### HISTORY OF THE CHAPTER 11 CASE

A. **The Debtor's Business and Pre-Petition History**

The Debtor is a privately owned Delaware limited liability company formed in 2020, with a principal place of business and mailing address at 20 East Sunrise Highway, Valley Stream, New York 11581. The Debtor is a holding company which is owned by GCM Missouri LLC in the amount of 46.713% and a multitude of nominal minority membership interest holders. The Debtor does not have any employees.

The Debtor is the 100% owner of the following seven (7) entities:

1.  LHW Master Tenant LLC (LHW) (an Affiliated Debtor)
2.  MO Master Tenant LLC
3.  SIRO Master Tenant LLC
4.  SIRO Prop Holdings LLC
5.  SRZ Master Tenant LLC (an Affiliated Debtor)
6.  TANDC Properties Missouri LLC
7.  WCCC Properties LLC

B.  **Events Leading to the Chapter 11 Filing**

The Debtor can trace the source of its pre-petition financial difficulties as follows.

This case is intertwined with the other Affiliated Debtors' cases.  In this case, the Debtor borrowed money from Capital Source, LLC and The Capital Foresight Limited Partnership (collectively, "Capital FS") and provided it with collateral and a minority equity interest in the Debtor. For instance, CF Care, LLC owns 19.646% of the Debtor (and is affiliated with Capital FS).  The Debtor engaged in numerous loan transactions with Capital FS concerning several assets.  The Debtor believes Capital FS received substantial assets of value in consideration of those loans.  In connection therewith, the Debtor filed an adversary proceeding to recover, among other things, damages from Capital FS and other defendants.  See below at section "D".

Based upon the adverse actions of Capital FS, the Debtor, in order to protect its interest in and the value of its assets, was compelled to file its voluntary petition under Chapter 11 of the Bankruptcy Code for the purpose of gaining the protections afforded under the Bankruptcy Code, preserving the value of the Debtor's estate, and providing a maximum recovery for creditors.

C.  **The Bankruptcy Filing**

On October 2, 2024, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtor's goal is to conduct an orderly liquidation while preserving maximum value, by conducting an auction sale to sell the Property and address its creditor obligations in accordance with the requirements of the Bankruptcy Code.

By Order of the Court dated October 22, 2024, the Court procedurally consolidated the Debtor's case together with the Chapter 11 cases of the Jointly Administered Debtors.

Having been afforded the protections of the Bankruptcy Code, the Debtor has begun its reorganization efforts.

At this juncture, the Debtor will liquidate its estate, as more fully set forth below. The Debtor will make distributions to the greatest extent possible to its creditors in accordance with the priorities of the Bankruptcy Code. Accordingly, the Debtor's liquidation under the Plan will maximize the level of recovery to creditors in an expeditious and expedient manner.

### D.  Affirmative Claims

The Debtor possesses valuable affirmative claims (the "Affirmative Claims") against Capital FS, Vertical Health Services LLC and others for, including without limitation, fraudulent conveyance; equitable subordination; disgorgement of profits; breach of contract; violation of 6 DE § 9-625; tortious interference; breach of fiduciary duty; aiding and abetting breach of fiduciary duty; breach of implied covenant of good faith and fair dealing; unjust enrichment; civil conspiracy; declaratory judgment and violation of §362 of the Bankruptcy Code.  Such Affirmative Claims are embodied in the complaint (the "Complaint") in the Adversary Proceeding No. 25-08015-AST filed on February 14, 2025 and pending before the Court. The Complaint is incorporated herein by reference in its entirety.

The Debtor's (and Affiliated Debtors') claims against VHS, an entity believed to be connected to Capital FS, are in the amount of not less than $31 million.  The Debtor's (and Affiliated Debtors') claims against Capital FS are, for among other things, equitable subordination, recharacterization of its claim and damages in an amount of not less than $5 million.

The Debtor will pursue these Affirmative Claims to protect the value of this lucrative asset for the benefit of the Debtor's estate.

Any and all potential bankruptcy causes of action are preserved for the benefit of the Debtor's estate and are preserved by this Disclosure Statement. To Date, the Debtor has not completed its analysis of whether it holds any claims against third parties under Chapter 5 of the

Bankruptcy Code. However, out of an abundance of caution, the Debtor's undersigned manager, Samuel Goldner, agrees that any and all potential bankruptcy Causes of Action are preserved for the benefit of the Debtor's estate by the pending plan and disclosure statement of the Debtor.

There may be Causes of Action under Chapter 5 of the Bankruptcy Code against Samuel Goldner, his affiliates, and insiders of Samuel Goldner, as that term is defined in the Bankruptcy Code. It is Vertical Health Services, LLC's ("VHS") position that, to the extent that the Debtor, in its business judgment, does not pursue any Causes of Action, VHS or other parties may bring those Causes of Action against Samuel Goldner, his affiliates, and insiders.

### E. Surplus Proceeds from sale of real estate in the LHW debtor's case

To the extent surplus funds exist from the sale of real estate in the LHW debtor's case, after payment of all claims thereunder, such surplus funds would be up-streamed to this Debtor's estate (equity).

### F. Retention of Professionals

The Debtor's application to employ the law firm of LaMonica Herbst & Maniscalco, LLP as general bankruptcy counsel to the Debtor was approved by Order of the Court.

The Debtor's application to employ the law firm of McGlinchey Stafford PLLC as special counsel to the Debtor was approved by Order of the Court.

### G. Claims Bar Date

By Order of the Court dated October 3, 2024, the Court fixed December 16, 2024 (the "Bar Date") as the date by which creditors must timely file a proof of claim ("Proof of Claim"). Accordingly, any Creditor having filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, and whose Claim is deemed an Allowed Claim, will receive payment in accordance with the terms of the Plan. Any Creditor who failed to file a Proof of Claim on or before the Bar Date (i.e. December 16, 2024), which is not listed on the Debtor's Schedules or is

6

listed as "disputed," "contingent" or "unliquidated" on the Debtor's Schedules, shall not receive a distribution under the Plan.

**IV**

**<u>THE PLAN OF LIQUIDATION</u>**

A.      **<u>Explanation of Chapter 11</u>**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor seeks to reorganize its business and financial affairs.  A debtor may also liquidate its assets and wind up its affairs in Chapter 11.  The formulation and confirmation of a plan of reorganization or liquidation is the principal purpose of a Chapter 11 case.  A plan of reorganization (which may include a plan of liquidation) sets forth the means of satisfying or discharging the holders of claims against a Chapter 11 debtor.  Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan in order for the Bankruptcy Court to approve a plan.  If any class of claimants is "impaired" by a plan, the plan must be accepted by at least one "impaired" class of claims.  A claim that will not be repaid in full, or a Claimant whose legal rights are altered, or an interest that is adversely affected, is deemed "impaired."

The holder of an impaired claim is entitled to vote to accept or reject the plan if the claim has been allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Bankruptcy Rule 3018.  Acceptance by a particular class must be by a majority in number and two-thirds (2/3) of the dollar amount of the total claims actually voting in the class.[2]

---

[2]   The Debtor reserves all rights to make application to the Court to estimate a claim and/or designate a vote of a claimant, under Section 1126(e) of the Bankruptcy Code.

B.    **Claims**

Pursuant to the Bar Order, any Creditor who failed to file a proof of Claim on or before the Bar Date and was not listed on the Schedules or was listed as "disputed," "contingent" or "unliquidated" cannot be treated as a Creditor with respect to such Claim for purposes of voting on and receiving a Distribution under the Plan.

All Proofs of Claim filed in this case have been preliminarily reviewed, and to the extent necessary, the Debtor will further review such claims and may file objections to certain filed claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to Claims brought by the Debtor, including any settlements or compromises of such claims. The Debtor reserves all rights to object to Claims.

The figures and information set forth below represent the Debtor's best estimate of the total amount of filed Claims in the case. These estimates have been developed by the Debtor based upon (i) an analysis of its books and records; and (ii) filed proofs of Claim. By Order of the Bankruptcy Court, December 16, 2024 was set as the last date for filing Proofs of Claim with the Clerk of the Bankruptcy Court. There can be no assurance that the amount of Claims that may be filed and allowed by the Bankruptcy Court will not exceed the amounts set forth or described herein. Nothing set forth in these schedules shall be deemed an admission by the Debtor as to the existence, validity, priority or amount of any claim asserted against the Debtor.

C.    **Classes Of Claims or Interests**

**Unclassified Claims**

Administrative Expense ClaimsAllowed Administrative Claims are claims against the estate for any costs or expenses incurred during the Chapter 11 case that are allowed and entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, but not limited to, all actual and necessary expenses, and all allowances of compensation or

8

reimbursement of expenses of professionals retained by the Debtor to the extent permitted by the Bankruptcy Court.

Administrative Claims include claims of Professionals approved by Order of the Bankruptcy Court who have assisted in the administration of this case and the administrative proofs of claims that were filed with the Bankruptcy Court. This sum includes the fees and expenses of professionals retained pursuant to Orders of the Bankruptcy Court, namely Debtor's counsel and special counsel.  Such professional fees are subject to Bankruptcy Court approval.

As for Debtor's counsel, the Debtor has incurred legal fees in this case through February 2025 in the approximate sum of $40,000.

As for Debtor's special counsel, the Debtor has incurred legal fees in this case through February 2025 in the approximate sum of $13,740.

Fees and Expenses of United States Trustee

The Debtor shall pay all statutory fees and applicable interest due to the Office of the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code. The total fees that will be incurred and owed to the United States Trustee are unknown at this time and based upon quarterly disbursements made by the Debtor.

Priority Tax Claims

Allowed Priority Tax Claims of a governmental unit that are entitled to priority in payment over Allowed Unsecured Claims pursuant to section 507(a)(8) of the Bankruptcy Code. A priority tax claim in the nominal amount of $179.05 has been filed by the New York State Department of Taxation and Finance.**Classified Claims**

Class 1 Claim – Allowed Secured Claim. This class consists of the Allowed secured claim of Capital Source, LLC in the amount of $14.0 million.  The Debtor disputes this claim and accordingly has filed a claim objection thereto [ECF No. 36], which is pending before the Court.

Class 2 Claims – Allowed General Unsecured Claims.  This class consists of the Allowed General Unsecured Claims.  The approximate amount of the claims in this class is $778,000.

Class 3 Interests – This class consists of the Allowed Member Interests of the Debtor.

**D.**     **Treatment of Allowed Claims**

Allowed Administrative Expense Claims

Administrative Expense Claims are unimpaired.  Upon or after the Effective Date of the Plan, each holder of an Allowed Administrative Expense Claim shall be paid in full, or on such other date and upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Debtor. Debtor's counsel shall be paid in connection with an application to and Order of the Bankruptcy Court.  Each holder of an Allowed Administrative Expense Claim shall be paid from available funds, which may include, to the extent necessary and/or applicable, including without limitation, (a) surplus funds obtained from the sale of real property in connection with LHW's case and up-streamed to this Debtor, (b) proceeds recovered from the Affirmative Claims, and/or (c) a nondebtor entity. Holders of Administrative Expense Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor will be assumed and paid by the Debtor in accordance with the terms and conditions of the arrangements with the particular creditor and in accordance with ordinary business terms and any Order of the Court concerning use of cash collateral.

10

<u>United States Trustee Claims</u>

The United States Trustee claims are unimpaired.  The Debtor shall pay all statutory fees and applicable interest due to the Office of the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code.

<u>Priority Tax Claims</u>

Priority Tax Claims are unimpaired. Allowed Priority Tax Claims of governmental unit(s) will be paid, in full, on the Effective Date from available funds or from a contribution by a nondebtor entity.  Priority Tax Claims are unimpaired, and therefore Priority Tax Claimants are not entitled to vote on the Plan and deemed to have accepted the Plan.

<u>Class 1 Claim – Allowed Secured Claim</u>

After the Effective Date, upon receipt of funds from the Affirmative Claims, and the receipt of any surplus funds from the LHW debtor's estate, the holder of an Allowed Class 1 Claim shall receive payment on account of such Allowed Class 1 Claim in accordance with the requirements and priorities under the Bankruptcy Code. To the extent, however, the Debtor is successful in its equitable subordination claim (in connection with the Affirmative Claims) against the holder of the Class 1 Claim, then the holder of the Class 1 Claim will be subordinated to the Class 2 Claims and receive distributions only after the Class 2 Claims have been paid in full. Accordingly, the Class 1 Claim is impaired, and therefore the holder of the Class 1 Claim is entitled to vote to accept or reject the Plan.

Class 2 Claims – Allowed General Unsecured Claims

After the Effective Date, upon receipt of funds from the Affirmative Claims, the receipt of any surplus funds from the LHW debtor's estate, and after the date upon which all objections to Class 2 General Unsecured Claims have been resolved or adjudicated by the Bankruptcy Court, each holder of an Allowed Class 2 Claim shall receive payment on account of its Allowed General Unsecured Claim in the amount of its pro rata share of available funds, after payment in full of the secured Allowed Class 1 Claim, Allowed Administrative Expense Claims, and Allowed Priority Tax Claims, and subject to any reasonable reserves for post-confirmation professional fees, except as otherwise agreed with the holder of such Claims.  Class 2 Claims are impaired, and therefore holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

Class 3 Interests – Allowed Member Interests

The Class 3 Interest consists of the membership interests of the Debtor. After the Effective Date, based upon and to the extent available funds exist after having paid all senior Classes of Claims in full with interest, then the members shall retain their Class 3 Interests under the Plan. The Class 3 Interests will receive Distributions under the Plan based upon available funds, and only in the event that all senior classes of Allowed Claims have been paid in full with interest. Whereas, to the extent no available funds exist to pay all senior Classes of Claims in full with interest, then the member interests shall be cancelled. The Class 3 Interests are impaired, and therefore the Class 3 Interests are entitled to vote to accept or reject the Plan.

**V**

**IMPLEMENTATION OF THE PLAN**

The Debtor's goal is to effectuate an orderly liquidation of the Debtor's estate in order to maximize value for the Debtor's estate and creditors.  The liquidating Plan contemplates the recoveries in connection with the litigation of the Affirmative Claims, and any surplus funds up-

streamed from the sale of real property in the LHW debtor's case, to pay to the maximum extent the creditors of the Debtor's estate in accordance with the requirements and priorities under the Bankruptcy Code.

## VI

## FEASIBILITY

The Plan is a liquidating Plan and provides an efficient and beneficial method for recovery on Claims to the greatest extent possible in accordance with the requirements and priorities under the Bankruptcy Code, based upon anticipated litigation recoveries in connection with the Affirmative Claims, and any up-streamed funds from the LHW estate. Based upon the foregoing, the Debtor will be able to implement its Plan. Therefore, the Debtor submits that the Plan satisfies the feasibility requirement for confirmation of the Plan.

## VII

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The Bankruptcy Court shall have entered the Confirmation Order, which Confirmation Order shall confirm this Plan, and upon such Order having become a final Order.

2.      There shall be no stay or injunction in effect with respect to the Confirmation Order.

## VIII

## VOTING

Under the Plan, Classes 1, 2 and 3 are impaired and entitled to vote.  To be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the

deadline set by the Bankruptcy Court, at Debtor's counsel's office, LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793, Attn: Joseph S. Maniscalco, Esq. and Adam P. Wofse, Esq.

IX

<u>**REQUIREMENT FOR CONFIRMATION**</u> OF THE PLAN

**A.     <u>Confirmation Hearing</u>**

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan.  The Confirmation Hearing shall be scheduled by the Court to be held before the Honorable Alan S. Trust, United States Chief Bankruptcy Judge, in the United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Alfonse M. D'Amato U.S. Courthouse, Central Islip, New York 11722, in Courtroom 960.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

**B.     <u>Objections to Confirmation</u>**

The Bankruptcy Court will direct that objections, if any, to Confirmation of the Plan be in writing, filed with the Bankruptcy Court with a courtesy copy to chambers of the Honorable Alan S. Trust, with proof of service and that such objections be served on or before such date as set forth in an additional notice or Order of the Court. Objections must be served upon (i) counsel to the Debtor, LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Wantagh, New York, 11793, Attn:  Joseph S. Maniscalco, Esq. and Adam P. Wofse, Esq.; and (ii) the Office of the United States Trustee, 560 Federal Plaza, Alfonse M. D'Amato U.S. Courthouse, Central Islip, New York 11722.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

14

**C.      Acceptance of the Plan**

Section 1129 establishes the requirements for confirmation of a Chapter 11 plan. The requirements are numerous and differ depending on whether or not confirmation is consensual. If consensual confirmation is sought because all classes have accepted the plan, Section 1129(a) governs. Classes of Claims that are not impaired under the Plan are deemed to have accepted the Plan. Under the Plan, Classes 1, 2 and 3 are impaired, and as a result, such Classes are entitled to vote.

**D.      Confirmation of the Plan**

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including: (i) that the Plan has classified Claims in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of the Bankruptcy Code; (iii) that the  Plan has been proposed in good faith; and (iv) that disclosures concerning the Plan have been made which are adequate and include information concerning all payments made or promised in connection with the Plan and the Chapter 11 case.  The Debtor believes that all of these conditions have been or will be met.

**X**

**EFFECT OF CONFIRMATION; INJUNCTION; EXCULPATION**

**A.      Effect of Confirmation**

On the Confirmation Date, the terms of this Plan bind all holders of all Claims against the Debtor, whether or not such holders accept this Plan.

**B.      Injunction**

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against the Debtor, its assets or property

are permanently enjoined from taking any of the following actions on account of such Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, its assets or property; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor, its assets or property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, its assets or property other than as contemplated by the Plan; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor, its assets or property; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

C.      **Exculpation**

In accordance with Section 1125(e) of the Bankruptcy Code, the Exculpated Parties who provided services to the Debtor's estate during this Chapter 11 case will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date through the Effective Date of the Plan in connection with or related to this estate, including but not limited to (i) the commencement and administration of the Chapter 11 case, (ii) the operation of the Debtor during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, or confirming the Plan (including soliciting acceptances or rejections thereof); or (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 case or in connection with the Plan.

Nothing in this section shall (i) be construed as a release of such Person's fraud, gross negligence or willful misconduct with respect to the matters set forth in this section, (ii) limit the

16

liability of the Debtor's professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility, or (iii) release any Person from any obligations as guarantor or indemnitor regarding any debt owed by, or claim against, the Debtor.

**XI**

**ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS**

**A.**     **Alternatives to the Plan**

The Debtor believes that the Plan provides creditors with the earliest and greatest possible value that can be realized on the respective Claims. The principal alternatives to confirmation of the Plan are: (i) dismissal of the case, or (ii) conversion of the case to chapter 7 of the Bankruptcy Code.

    (i)     Dismissal

By virtue of the proceeds the Debtor will distribute in connection with the Plan, the creditors stand to receive the maximum recovery possible on account of their Claims as set forth herein and in the Plan, in accordance with the requirements and priorities of the Bankruptcy Code. Whereas, if the Plan is not approved and the case was to be dismissed no recovery for most creditors is likely. Moreover, the equitable subordination claim in connection with the Affirmative Claim is only available in a case under the Bankruptcy Code. Thus, dismissal would result in a wasted opportunity to maximize the value of the Debtor's assets and recovery herein, to the detriment of most classes of creditors.

    (ii)     Conversion to Chapter 7

The Debtor submits that a conversion to Chapter 7 would not be in the best interests of creditors. As described in Section XI (B) below ("Best Interests of Creditors"), liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would not generate a greater distribution to creditors than as proposed under the Plan. Conversion to Chapter 7 of the

Bankruptcy Code would entail the appointment of a case trustee. The additional administrative costs incurred by a trustee and its attorneys and professionals would also be substantial, and would substantially and negatively impact the ability of creditors to receive payments on their claims. Secured creditors would be compelled to grant a carve out of liens for the trustee and the trustee's professionals' administrative costs, thereby reducing recoveries on claims. Further, it is likely that most if not all creditors would receive lesser or no distributions on account of their claims.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan maximizes the property available for distribution to Classes of Claims and appropriately distributes all the Debtor's assets to the creditors without the added Administrative Expenses of a Chapter 7 trustee and its attorneys and other professionals.

## B.    Best Interests of Creditors

Notwithstanding acceptance of the Plan by Classes of Claims, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes of Claims. The "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired Class of Claims a recovery which has a present value at least equal to the present value of the distribution which each such creditor would receive from the Debtor if its assets were instead distributed by a trustee under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies the "best interests" test" with respect to all Classes of Claims since, the creditors will, in order of priority under the Bankruptcy Code, receive payments under the Plan whereby more classes of creditors would receive recoveries, and of those receiving recoveries, junior creditors would receive higher recoveries than they otherwise would under a Chapter 7 liquidation. Therefore, creditors will receive under the Plan not less than they would receive under a Chapter 7 liquidation.

Furthermore, as indicated above, in the event of a Chapter 7 liquidation, higher priority creditors including secured claimants might receive less than full value on their claims, and certainly priority and/or unsecured creditors would likely receive a lesser distribution or no distribution whatsoever.

The cost of converting the case to one under Chapter 7 would include the fees of a trustee, as well as those of the Chapter 7 trustee's counsel and other professionals that may be retained by the Chapter 7 trustee, and unpaid expenses incurred by the Debtor during the Chapter 11 case (such as fees for attorneys). Assuming a carve out was even obtained by a Chapter 7 trustee, these claims for Chapter 11 professionals would be paid from the Debtor's assets before its assets would be available to pay junior creditors, resulting in substantially less of a recovery by the trustee for these creditors of this estate.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST POSSIBLE RECOVERY ON ACCOUNT OF CLAIMS AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

C.      **Liquidation Analysis**

The Debtor believes that if the case were converted to a Chapter 7 case, unsecured creditors would receive no greater distribution on account of a liquidation of the estate under Chapter 7 than they would under the Plan. Moreover, the allowed secured creditor might be in jeopardy of receiving full payment on its claims, especially given the Chapter 7 trustee costs for which the trustee would seek a carve out of liens to cover the trustee's and professionals' administrative costs of liquidation and administration of the estate.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan maximizes the value of all property available for distribution to all Classes of Claims in the most efficient and effective manner possible. Accordingly, the

Debtor believes that confirmation of the Plan, rather than the alternatives described above, is in the best interests of creditors.

## XII

## RECOMMENDATION OF THE DEBTOR

The Plan and this Disclosure Statement were drafted and submitted by the Debtor. As such, the Debtor strongly supports this Plan and believes that Confirmation of the Plan provides the Creditors with the best possible recovery in the shortest possible time.

## XIII

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Plan, and any other materials or questions relating to the Plan and this Disclosure Statement should be directed to Debtor's counsel, LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793, Attn: Joseph S. Maniscalco, Esq. and Adam P. Wofse, Esq., at (516) 826-6500 during regular business hours.

## XIV

## TAX CONSEQUENCES

The Debtor is not aware of any tax consequences which may result from the confirmation of the Plan. Creditors should consult with their own tax advisor concerning any such tax related implications. Creditors should consult with their tax advisor concerning (a) any deductions which may be applicable to them as bad debt deductions, or (b) income tax implications based upon forgiveness of debt, if applicable, based upon the provisions of the Debtor's Plan.

Pursuant to IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that (a) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be

20

used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based upon their particular circumstances from an independent tax advisor.

**XV**

**<u>CONCLUSION</u>**

The Debtor believes the Plan is in the best interests of all Creditors.

**[signature page follows]**

Dated: July 1, 2025

                            **LaMonica Herbst & Maniscalco, LLP**
                            Counsel for the Debtor

By:    */s/ Joseph S. Maniscalco*
        Joseph S. Maniscalco, Esq.
        Adam P. Wofse, Esq.
        3305 Jerusalem Avenue, Suite 201
        Wantagh, New York 11793
        (516) 826-6500

Dated: July 1, 2025

                            **MISSOURI MT HOLDINGS LLC**
                            Chapter 11 Debtor

By:    */s/ Samuel Goldner*
        Samuel Goldner, Manager of GCM Manager LLC,
        as Manager of the Debtor

22